O’NIELL, J.
The judgment of the district court has decreed that the plaintiff is the owner of fractional section 16, T. 6 N., R. 3 W., and condemned the defendants to pay her rents- at the rate of $231.56 per annum from judicial demand until she shall be given possession of the land. The defendants have appealed.
[1] The plaintiff is the vendee of Thomas J. Hickman, to whom the United States issued a patent for the land in controversy, of date the 15th of February, 1909.
The defendants purchased from Robert S. Cameron, on the 17th of October, 1892, with other lands adjoining—
“all that portion of section number sixteen lying north and east of Bayou Philips, containing about 125 acres.”
This sale was made in the proportion of an undivided half of the property to John H. McNeely and an undivided fourth to each of the other two defendants, George H. McKnight and Thomas P. McKnight. Robert S. Cameron acquired from Ludlow McNeely, in an act of partition dated the 5th of December, 1887, with other lands adjoining, “fraet.; sec. No. 16, containing 434 acres.” Ludlow McNeely and Robert S. Cameron purchased jointly the undivided half interest of William S. Calhoun, as the heir of Mary Smith Calhoun, at a public sale made by the sheriff on the 16th of December, 1882, a large body of land within which the tract in dispute is embraced. William S. Calhoun and his sister, Maria Margaret Ada Calhoun, were recognized as the sole heirs of their deceased mother, Mary Smith Calhoun, by a judgment of the parish court, not dated, but rendered and signed on or about the 3d of June, 1873. Robert S. Cameron and Ludlow McNeely, after purchasing the undivided half interest of William S. Calhoun in his mother’s estate, brought suit against their co-owner, Maria Margaret Ada Calhoun, then the wife of George W. Lane, for a partition of the land; -and, in the judicial partition, dated the 9th of April, 1883, Cameron and McNeely acquired, with other lands adjoining, “434.86 acres in the northern and western portion of section No. 16.”
In support of their title and pleas of prescription of 10 and 30 years, the defendants in possession have proven that the land in dispute has been occupied and cultivated by them and their authors continuously for more than 30 years prior to.the institution of this *394 suit. In fact, as early as 1856, this fractional sixteenth section was embraced within a tract of about 7,500 acres known as “Smith-field” or “Meredith” or “Calhoun” plantation, which was then occupied and cultivated by, William Smith, as owner. The defendants are unable to produce a written deed to William Smith, or from him to Mary Smith Gálhoun, who is referred to as his granddaughter. In fact, there is no written evidence of transfer of this land earlier in date than the sheriff’s sale to Cameron and MeNeely of date the 16th of December, 1882. . I-t appears, however, that the courthouse in Alexandria, the parish seat of Rapides parish, was destroyed by fire in 1863 or 186.4, and that the courthouse in Grant parish was destroyed by fire in 1878 or 1879. Grant parish was created from portions of the parishes of Rapides and Winn in 1869, prior to which time the land in controversy was in the parish of Rapides. The defendants assume that the title deeds of their authors, prior in date to those exhibited, were destroyed in one or the other of the courthouse fires. - •
The defendants contend that 'the. patent issued by the United States to the plaintiff’s author, Thomas J. Hickman, is void, because, as they say, all sixteenth sections in place were previously granted to the state for school purposes, and the land in clispute is' a fractional sixteenth section in place. They concede that there is no direct proof that this so-called school section was ever sold by the parish treasurer, as authorized by the Act No. 321 of the General Assembly of-1855, providing the manner of selling the sixteenth sections, under authority of the act of Congress of the 15th of February, 1843 (5 Stat. 600, c. 23), authorizing the Legislature to provide for the sale of the lands appropriated for the schools of this state. -The defendants contend, however, that this land must have been sold by the parish treasurer, because there is a fund of $892.57 on deposit to the credit of township 6 N., R. 3 W., according to the record in the office of the auditor of public accounts. Their argument is that, as the courthouse records have been destroyed by fire, it must be presumed that this fund represents the proceeds of a sale of the sixteenth section in the township to which it is credited.
The defendants rely upon the decision rendered by this court in the case of Winn Parish Bank v. White Sulphur Lumber Co., 133 La. 282, 62 South. 907, to the effect, that, where the courthouse records have been destroyed by fire, the auditor’s receipt of the price creates a presumption that a sixteenth section was sold according to law.
In the case cited, the auditor certified that volume 1, folio 417, of the township ledger in his office, contained the entries of the sales of the various portions of the sixteenth section involved, with the names of purchasers, dates, etc. Whereas, in the present case, the records in the auditor’s office show only that, the parish of Grant is credited with $743.81, on which $29.75 interest is paid annually to the treasurer of the parish school board, and that the parish of Rapides is credited with $148.-76, on which $5.98 interest is paid annually to the treasurer of the parish school board of that parish. The auditor has certified that these sums of money are on deposit to the credit of the school funds for section sixteen, T. 6 N. R. 3 W., but the records do not show how or when the fund was derived.
The plaintiff contends that this deposit to the credit of the school funds of township 6 N. R. 3 W. is accounted for by the sale of indemnity warrants or scrip issued to the state in lieu of the sixteenth section, and does not represent the proceeds of a sale of the land by the state or the parish treasurer..
The approved survey of T. 6 N. R. 3 W.. shows that all of section 16, except this northwest corner containing 57.89 acres, was lost by the state by the conflict with the private- *396 claim known as the Jacques Peconclam grant, the description and location of which are accurately stated in the case of Teddlie & Dunn v. McNeely et al., reported in 104 La. 603, 29 South. 247.
On the 2d of November, 1853, the state of Louisiana sold to Augustine Duplantier, for $727.03, indemnity warrant No. 127 for 582.11 acres, which scrip had been accepted by the state in lieu of the lost portion of section 16, T. 6 N. R. 3 W. On the 20th of April 1855, this warrant No. 127 was located.on lands of the United States in sections 35 and 36, T. 20 N. R. 3 E., in full satisfaction of the scrip; and the selection was approved by the Secretary of the Interior. This indemnity of 582.11 acres of the 640 acres to which township 6 N. R. 3 W. was entitled left a balance due the state of 57.89 acres, which is the exact area of the land in dispute, that is, the portion of section 16 lying outside of the Pecondam grant.
Whether this remaining fractional portion of the sixteenth section, containing 57.89 acres, would have been reserved to the state for school purposes, without being selected and approved by the Secretary of the Treasury (now the Interior Department) as provided in the second section of the act of Congress of the 20th of May, 1826, is oi no importance, in view of the fact that the state accepted and sold additional indemnity scrip in lieu of the land, and in full satisfaction of its claim. The record discloses that on the 15th of May, 1855, the state sold to W. H. Osborne, for $200, indemnity warrant No. 1738 for 160 acres, which, the warrant recites, was “in full satisfaction of the claim for township six north, range three west.” Ten days thereafter this warrant was located upon the United States land designated as the S. E. Vi of section 32, T. 2 N. R. 1 W.; and the selection was approved by the Secretary . of the Interior. The record does not show why the state was allowed 160 acres as indemnity for the 57.89 acres in the fractional section 16, T. 6 N. R. 3 W, but this is of little or no importance, so long as the state received indemnity in excess of the area of land to which the township was entitled. It is recited in the deeds of sale of these two warrants that the proceeds were paid into the treasury for the support of the schools of township 6 N, R. 3 W.
We conclude, therefore, that the Department of the Interior, in passing upon the application of Thomas J. Hickman, decided correctly that the selection of additional school indemnity in excess of the area of section 16, T. 6 N. R. 3 W., was an acknowledgment on the part of the state that it had no title to the sixteenth section in that township.
[2] From the date of the sale of the indemnity warrant No. 1738, that is, from the 15th of May, 1855, to the date of the patent to Thomas J. Hickman, that is, to the 15th of February, 1909, the fractional section 16, T. 6 N. R. 3 W., now in controversy, belonged to the United States. Therefore, referring to the defendants’ pleas of prescription, it is sufficient to say that statutes of limitation do not run against the government of the United States; they do not begin to run against the patentee until the patent has been issued to him. See Haggerty v. Annison, 133 La. 338, 62 South. 946, citing Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534; Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264; Irvine v. Marshal, 20 How. 558, 15 L. Ed. 994; Lindsey v. Miller, 6 Pet. 672, 8 L. Ed. 538; Simmons v. Ogle, 105 U. S. 271, 26 L. Ed. 1087; Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327. The pleas of prescription were therefore properly overruled.
The defendants, appellees, do not complain of the amount allowed in the judgment torrent. One of them testified that $4 per acre is a reasonable rental value of the land per year.
*398 For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellants.