## Willoughby *v.* Caston.

[72 South. 129.]

1. **Adverse Possession.** *Public land. Cancellation of entry. Acquisition of title against state. Control of land department. Statute of limitations. Running against the state.*

Where the predecessor of defendant made a homestead entry on lands of the United States in 1858, and afterwards conveyed to one who continued in possession, but the homestead entry was subsequently cancelled in 1897 by the federal government, confirming a selection of swamp and overflowed land made by the state, pursuant to a congressional donation in 1850, approved by the secretary of the interior in 1900 to perfect the title in the state. In such case defendant did not have title by adverse possession against the patentee of the state, the ten-year statute not running against the federal government, or since January 24, 1877, against the state.

2. **Same.**

Defendant's predecessor did not in such case acquire good title by adverse possession prior to 1877 on the ground that when the land department of the federal government in 1900 approved the state's selection of the swamp and overflowed lands, the inchoate title of the state was perfected as of the year 1850, when the lands were donated by Congress, so that the doctrine of relation back applied.

3. **Public Lands.** *Control of the land department.*

Until the selection of the lands, as being of the character of lands passing under the act of 1850, had been approved, the whole question still remained under control of the United States Land Department, at least to the extent of its full power and author-

ity in all proper cases to order a resurvey or to correct any errors or mistakes, until the selection had been approved and a patent issued conflicting claims must be settled by the United States Land department and not by the courts.

4. ADVERSE POSSESSION. *Public lands. Statute of limitations. Running against the state.*

The statute of limitations does not ordinarily begin to run until the sovereign power has conveyed the title by a proper patent until the title of the state has thus been perfected and the jurisdiction of the United States Land department finally released, the state is not in a position to take account of squatters upon such land or adequately protect her right.

APPEAL from the chancery court of Marion county. HON. R. E. SHEEHY, Chancellor.

Suit by E. G. Caston against T. R. Willoughby. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*A. E. Weathersby, B. S. Silverstein, P. Z. Jones* and *Mayes & Mayes,* for appellant.

*Mounger & Ford* and *Whitfield & Whitfield,* for appellee.

STEVENS, J., delivered the opinion of the court.

This cause was affirmed on a former day of this term without a written opinion. An elaborate suggestion of error has been filed, and in view of the questions so earnestly pressed by counsel, we proceed to state briefly the reasons which induced us to affirm the case. The case, as presented by the pleadings, is as follows: E. G. Caston, appellee herein, as complainant in the court below, exhibited his bill in the chancery court of Marion county to confirm his title to certain lands therein mentioned, basing his claim of title on a patent issued to him by the state of Mississippi December 12, 1905. The bill prayed that the claim of title of the defendant T. R. Willoughby be canceled.

The defendant answered the bill and made his answer a cross-bill denying the material allegations of the original bill, denying that the state of Mississippi had any title to convey to Mr. Caston, and the cross-bill deraigned the alleged title of Mr. Willoughby from the United States of America by mesne conveyances to cross-complainant, and also averred the existence of title by adverse possession. Mr. Caston, the original complainant, claimed that the lands were conveyed by the United States to the state of Mississippi under the act of Congress approved September 28, 1859 (9 Stat. 519, chapter 84), commonly known as the Swamp and Overflowed Land Act, and that the state of Mississippi, without parting with the title to any one else, patented the land to Mr. Caston in December, 1905. The cross-complainant averred that the United States conveyed the lands in question to one Josiah Holmes December 24, 1858, and that cross-complainant acquired title through a chain of conveyances tracing to Josiah Holmes, and that he and those under whom he purchased had been in the actual adverse possession of the land for more than ten years. The land commissioner of the state was made a party to the suit and given an opportunity to defend Caston's title. On final hearing the court decided the case in favor of appellee Mr. Caston and canceled the claim of Mr. Willoughby as a cloud upon complainant's title. From this decree Willoughby, as defendant in the court below, prosecutes this appeal.

The evidence in the case shows that Josiah Holmes entered the lands from the United States government December 24, 1858, but the records of the land office further show that this entry was canceled December 20, 1897, and that no patent was ever issued to Josiah Holmes. The evidence further shows that the land was donated to the state by the act of Congress approved September 28, 1850; that these lands were selected by the state and listed in what is known as list No. 29;

that this list was not approved by the Secretary of Interior at Washington, D. C., until December 31, 1900, when the Secretary of the Interior approved list No. 29, which included the lands in controversy, and on February 16, 1901, certified his approval so as to authorize the issuance of the patent.

It thus appears by the undisputed record evidence in the case that the proper authority of the United States government did not approve the selection of these lands as swamp and overflowed lands, and therefore within the grant of the act of September 28, 1850, until a short time prior to the date of the issuance of patent by the state land commissioner to appellee. The material inquiry, therefore, is whether the statute of limitations can be invoked by appellant in this case; or, in other words, whether the statute began to run until the Secretary of the Interior approved the selection as swamp and overflowed land and thereby perfected the state's claim.

Without a prolonged discussion of the question, we hold that appellant did not acquire title by adverse possession for the reason that the statute of limitations cannot be invoked by appellant in aid of his title. It may be conceded that the act approved September 28, 1850, was a grant in *praesenti,* and that if the land was in deed and in fact of the character contemplated by the act, that is, wet or overflowed lands, the beneficial interest has been in the state of Mississippi since the approval of the act. At the same time, the grant, as stated by the United States supreme court, was in process of administration, and the land was subject to the jurisdiction of the Land Department of the United States government until the patent was issued. It is well settled that the statute of limitation here invoked does no run against the United States government, and, since January 24, 1877, does not run against the state of Mississippi. It is true that Josiah Holmes entered these lands in 1858, and even though he may have un-

dertaken to convey the title to one who continued his possession, it yet remains that the homestead entry of Josiah Holmes was subsequently canceled by the very authority that permitted him to enter the lands. Josiah Holmes entered by permission of the United States government, but as an entryman his claim was wholly within the jurisdiction of the United States Land Department and the department evidently in recognition of an error in permitting Holmes to enter the lands subsequently canceled his entry and confirmed the selection made by the state in list No. 29 and proceeded to perfect the title in the state of Mississippi. The sovereign power which invited Holmes to enter into possession on the theory that the lands were subject to entry as a part of the public domain subsequently canceled Holmes' entry before his title to the land had been perfected under the homestead laws, and the right of the government to cancel the Holmes' entry and to perfect the state's title is too well settled to require discussion at this time. To say that Josiah Holmes, and those claiming under him, could enter by permission of the United States Land Department and while in possession attempting to perfect the homestead entry, could convert their permissive entry into a hostile claim of ownership, would amount to a holding that a homestead entryman could appropriate by adverse possession the public domain contrary to the laws of the United States. But it is contended that when the secretary of the interior finally approved the selection in this case in 1900 the so-called inchoate title of the state was perfected as of date September 28, 1850; or, in other words, that the doctrine of relation back applies and that Josiah Holmes, and those under whom he claims, acquired a good title by adverse possession prior to 1877. The fallacy of this argument lies in the fact that the doctrine referred to would apply only in favor of the state's grantees in this case, and not in favor of those claiming adversely

to the state.   If the state of Mississippi had seen fit to patent these lands to appellant or to one under whom he claims prior to the selection and approval of the lands as swamp and overflowed, then the doctrine of relation back would come to their rescue and perfect that which had been inchoate.   Appellant, however, is a stranger to the state's title, and not only is he a stranger to the title of the state, but he asserts a hostile claim.   He is in the attitude of saying that:

"Although neither I nor those under whom I claim ever had a record title either from the United States or from the state of Mississippi, we yet have title by adverse possession."

Until the selection of the lands, as being of the character of lands passing under the act of 1850, had been approved, the whole question still remained under the control of the United States Land Department, at least to the extent of its full power and authority in all proper cases to order a resurvey or to correct any errors or mistakes.   Until the selection has been approved and a patent issued conflicting claims must be settled by the United States Land Department and not by the courts.   *Brown* v. *Hitchcock,* 173 U. S. 473, 19 Sup. Ct. 485, 43 L. Ed. 772.

With reference to the statute of limitations, we believe the true rule should be and is that it does not ordinarily begin to run until the sovereign power has conveyed the title by a proper patent; and under the facts of the present case we are convinced that the statute did not begin to run until the title was confirmed in the state by the proper approval of the selection by the Secretary of the Interior.   Until the title of the state has thus been perfected and the jurisdiction of the United States Land Department finally is released, the state is not in a position to take account of squatters upon such lands or adequately to protect her rights.   Under this view of the case it is unnecessary for us to examine the evidence to determine whe-

ther the proof shows a sufficient occupancy by appellant and those under whom he claims, or to comment upon any other question presented by this appeal. We refer to the following authorities in support of the views here expressed: *Gibson* v. *Chouteau,* 13 Wall. 92, 20 L. Ed. 534; *Michigan Land & Lumber Co.* v. *Rust,* 168 U. S. 589, 18 Sup. Ct. 208, 42 L. Ed. 591; *Brown* v. *Hitchcock, supra; Redfield* v. *Parks,* 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327; note, 76 Am. St. Rep. 480; *Price* v. *Dennis,* 159 Ala. 625, 49 So. 248; *Morrow* v. *Whitney,* 95 U. S. 551, 24 L. Ed. 456; vol. 2, Corpus Juris, pp. 217 and 224; note, vol. 6, Fed. Stat. Ann. p. 404; *Riggio* v. *McNeely,* 135 La. 391, 65 So. 552; *Rogers Locomotive Machine Works* v. *American Emigrant Co.,* 164 U. S. 559, 17 Sup. Ct. 188, 41 L. Ed. 552; *Carr* v. *Moore,* 119 Iowa, 152, 93 N. W. 52, 97 Am. St. Rep. 292.

*Suggestion of error overruled.*