142 So. 150

CHERAMI et al. v. CANTRELLE et al.

SAME v. GUIDROZ et al.

No. 31074.

April 25, 1932.

Rehearing Denied May 23, 1932.

Louis R. Hoover and Hubert M. Ansley, both of New Orleans, for appellants.

Caillouet & Caillouet, of Houma, and Francis L. Knobloch, Howell & Deramee, and C. A. Morvant, all of Thibodaux, for appellees.

LAND, J.

The above suits, Nos. 6119 and 6120 in the lower court, are petitory actions, and have been consolidated for purposes of trial.

Plaintiffs in each suit are the lawful heirs and descendants of Joseph Cherámi and his wife, Gertrude Michel.

In suit No. 6119, plaintiffs claim that Joseph Cherami was the owner of certain lands in Lafourche parish, arising out of Spanish grants made to him; that the lands were confirmed to Joseph Cherami by the commissioners of the Eastern district for the territory of Orleans; that these lands were regularly surveyed as sections 46, 49, and 102, township 17 south, range 20 east, in the Southeastern district of Louisiana, west of the Mississippi, and contain 4,3564⁵⁄₁₀₀ acres; and that on June 3, 1897, the United States government issued patent for these lands to Joseph Cherami and his heirs.

In suit No. 6120, plaintiffs claim the ownership of lands in section 5, township 17 south, range 21 east, and in section 42, township 18 south, range 21 east, in the Southeastern district of Louisiana, west of the Mississippi river, containing 6505⁷⁄₁₀₀ acres.

These lands are shown and described in United States patent No. 484, which was issued to Joseph Cherami and his heirs July 16, 1897.

Plaintiffs allege that defendants and occupants of the lands described in the patents have been in the possession of same for a number of years, and pray that they may be held to account for the rents and revenues of the property.

The allegations in both suits are practically the same. Plaintiffs' demands were rejected, and their suits were dismissed in the lower court in each case, and from this judgment plaintiffs have appealed.

The lands herein claimed by plaintiffs in suit No. 6119, and designated as sections 46, 49, and 102, were included in the original claim, No. 119, confirmed to Joseph Cherami on January 3, 1812, by the commissioners of land claims for the Eastern district of the territory of Orleans.

In suit No. 6120, plaintiffs claim the ownership of section 5, T. 17 S., R. 21 E., and of section 42, T. 18 S., R. 21 E., containing an aggregate of 6505⁷⁄₁₀₀ acres.

These sections form one body of land, and are covered by claim No. 448, confirmed to Joseph Cherami on January 3, 1812, by the commissioners of land claims for the Eastern district of the territory of Orleans.

These two Cherami claims were confirmed under the provisions of section 4 of the Act of Congress of March 3, 1807 (2 Stat. 441).

But the 73 arpents front on the right descending bank of Bayou Lafourche, embraced in Joseph Cherami's original claim, No. 119, had been taken up by seven other confirmations made at, or about the same time; the confirmees being Farcy Verret, Pierre Mercier, Thomas de Villaneuva, Vincent Daillais, Jean Labatt, Antoine Bosse, and Louis Ogeron.

These and other conflicting claims were submitted to the register and receiver of the United States Land Office at New Orleans, acting as commissioners for the Eastern district of Louisiana, under section 6 of the Act of Congress of March 3, 1831 (4 Stat. 494), and it was decided by the commissioners on November 14, 1892, that the claim of Villaneuva was the only one superior in date and time to the original claim, No. 119, of Joseph Cherami, and that the claims of all the others were inferior to that of Cherami.

As the effect of this decision, the Cherami original confirmation on the right descend-

ing bank of Bayou Lafourche was no longer 73 arpents front, but became known as sections 46 and 49, which are separated from each other by the intervening superior claim of Villaneuva, No. 35 or section 48.

1. The pleas of prescription of 10 years acquirendi causa, set up by each of the defendants in suit No. 6120, were maintained by the trial judge, and plaintiffs' demands were rejected at their costs.

In suit No. 6119, thirty-five defendants admitted possession of portions of sections 46, 49, and 102, which plaintiffs claim as an entirety.

This suit was dismissed on plaintiffs' own motion as to four defendants admitting possession.

Of the remaining thirty-one defendants admitting possession, nineteen set up titles out of Joseph Cherami, plaintiffs' author in title, which were maintained by the lower court.

Of the twelve defendants left, nine of them set up titles out of the confirmees, conflicting with the claims of Joseph Cherami, as did sixteen of the nineteen defendants above named, which were also maintained in the court below. The remaining three defendants, and seventeen others, were unable to trace back their titles to any one of the conflicting confirmees, but did trace them back to one Hugh Gaston Johnson, May 28, 1810, or nearly 122 years ago. Their pleas of prescription of 10 years acquirendi causa, as well as that of the Bank of Lafourche for the uppermost 4 arpents front tract in section 102, were maintained by the trial judge. The prescription of 30 years, also pleaded by all defendants admitting possession, was not passed upon by the trial judge.

Plaintiffs oppose the pleas of prescription of 10 and 30 years, tendered by defendants in these suits, on the ground that the Joseph Cherami lands involved herein remained the property of the United States until the patents issued in 1897 to Cherami and his heirs, and that the authorities are uniform that prescription does not run against the United States.

It is well settled that no possession, however protracted, can confer on the occupant a title to any part of the public domain of the United States as against the government.

However, these legal principles, although admittedly correct, have no application to the present cases, since plaintiffs have permitted defendants, claiming as owners under titles, to remain in undisturbed possession of these lands for more than 10 years after the issuance of patents to Joseph Cherami and his heirs.

The greater portion of the lands covered by the Cherami claims has been occupied and possessed by the defendants and their authors, in the capacity of owners, in good faith and under recorded titles, continuously, peaceably, and publicly, in no instance less than 86 years prior to October 4, 1926, the date on which plaintiffs filed their petitory actions, and, in other instances for as many as 100 up to 112 years.

For the purpose of shortening the trial of these cases, plaintiffs "admit that all the defendants would testify to possession in fact from the dates of their respective chains of titles as detailed in their answers; therefore, it is agreed that no further testimony shall be taken on the question of possession in these cases."

As patents for the lands in dispute were issued to Joseph Cherami and his heirs June 3, 1897, and July 16, 1897, prescription began to run against the patentee from those dates. Riggio v. McNeely et al., 135 La. 391, 65 So. 552; Welch et al. v. Forest Lumber Co.; 151 La. 960, 92 So. 400; Evans ·v. Jackson, 165 La. 737, 116 So. 168.

Actual possession of the defendants pleading prescription, for more than 10 years since the year 1897, under titles translative of property, is not denied by plaintiffs.

"He who acquires an immovable in good faith and by a just title, prescribes for it in ten years." R. C. C. art. 3478.

"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." R. C. C. art. 3481.

In order to defeat the pleas of prescription of 10 years in these cases, plaintiffs have charged defendants with bad faith, because of an admission made by defendants that "they purchased their respective properties, as set out in their answers, with knowledge of the decision of the Board of Land Commissioners, designated as Nos. 119 and 448, and believed that title to the property involved in the suits 'passed to Joseph Cherami upon the dates of said confirmations, if no prior confirmation of like character had been made by the Land Commissioners to the same lands or parts thereof."

We are at· a loss to understand how the present occupant of any Spanish grant to-day may be in bad faith, because he may know by tradition that the land he occupies was originally confirmed to this or that man a century ago, although he has full confidence in the integrity of the title by which he recently acquired from a former possessor who was himself recognized as the owner.

As showing bad faith, plaintiffs have also attacked links in the chains of title tendered by defendants upon the following grounds:

(a) No stipulation of warranty as to nineteen acts tendered.

(b) Warranty only against vendors' acts as to seven acts tendered.

Both of these objections are without merit. As said in Land Development Co. v. Schulz, 169 La. 9, 124 So. 125, 128: "A stipulation in an act of sale that the seller does not warrant the title might be regarded as an indication that the seller lacked faith in his title, but it is not an indication that the buyer lacked faith in the title. Templet v. Baker, 12 La. Ann. 658; Brewster v. Hewes, 113 La. 45, 36 So. 883; Read v. Hewitt, 120 La. 288, 45 So. 143; Kinchen v. Redmond, 156 La. 418, 100 So. 607; Clayton v. Rickerson, 160 La. 771, 107 So. 569."

"The seller's having no faith in his title is a matter of no importance in regard to the prescription of 10 years."

(c) Vendor retained usufruct of property as to one act tendered. Title is good as to the naked ownership. This objection is without merit.

(d) Property sold at private auction as to one act tendered. The subsequent ratification by the parties interested perfected the transfer.

(e) Agent not authorized to warrant as to three acts tendered. It does not appear that the agent was forbidden to warrant.

There was a mere failure to recite in the power of attorney that agent was authorized to warrant. Seller is bound in warranty, although at the time of the sale no stipulations were made respecting warranty. R. C. C. art. 2501.

■■ (f) At vendee's peril, except as to vendor's acts as to one act tendered.

(g) Guarantee as against evictions as to one act tendered.

In the Schulz Case, cited above, the vendor transferred "all right and title so acquired, * * * without warranty and without recourse to * * * the restitution of the purchase price." The court held that this recital did not in itself deprive Mrs. Schulz of the presumption of good faith that attached to her as purchaser of title for value. The effect of this decision is to nullify the objection contained in (f); while an act containing only "a guarantee against evictions" is in itself a substantial warranty.

■ (h) Acts transferred "all right, title and interest."

Ten of these acts recited a definite fractional interest, and two identified the interest sold as inherited from a parent. These acts are sufficiently definite to identify the land sold and to create warranty. The objection to them is not well founded.

■ (i) Power of attorney not annexed to act as to two acts tendered.

"A sale of immoveable property, followed by tradition by a person styling himself the attorney in fact of the owner, but whose power of attorney is not produced, is only defective for want of the evidence of his authority, and not a nullity of form resulting from his legal incapacity." Bedford v. Urquhart et al., 8 La. 241.

"A conveyance by one purporting to act under a written power of attorney will form the basis of prescription acquirendi causa under Civ. Code, art. 3479, though the power of attorney did not embrace the property in dispute, and he had no written authority to convey such property." Greening et al. v. Natalie Oil Co. et al., 152 La. 467, 93 So. 682.

■ (j) No date of recordation as to six acts tendered by defendants.

"To serve as a basis for prescription, the title need not be recorded. Registry is required only for transferring the property, and in the law of prescription the title does not operate to transfer the property, but merely to establish the good faith of the possessor and fix the limits of the possession." Bernstine v. Leeper et al., 118 La. 1098, 43 So. 889, 890.

■ As none of the objections to the links of title tendered by defendants is well taken, it must be presumed that the transferees entered into possession of the property purchased in good faith.

The contention of plaintiffs that Joseph Cherami had only an inchoate right in and to these lands, until patents were issued to him in 1897, is unimportant in so far as concerns titles tendered by defendants, who rely upon the prescription of 10 years acquirendi causa.

The chains of titles presented by defendants, who admit possession, lead back to but a few original authors.

Section 46: Seven defendants present chains of title back to a notarial sale from

Cherami to Descorde on July 19, 1806. Three defendants go back to Pierre Mercier February 2, 1810, by notarial act. Two of these, Emelius Dupuis and Garey, have been dismissed by plaintiffs.

Section 49: Nine defendants present titles back to notarial sale, May 8, 1805, Cherami to J. C. Theriot December 6, 1845. Three defendants back to judicial sale December 6, 1845 from Jean Labatt. Two, Luke Guidroz (1 and 2) to Bosse (N. P.), November 22, 1820, and to L. Ogeron, June 2, 1821. Three to Hugh Gaston Johnson by notarial act May 28, 1810.

Section 102: Back to the succession of Girod February 18, 1814, divested by a judicial sale. Those of Arthur Falgout, of the widow Melancon, and of the Bank of Lafourche continue back to a judicial sale May 13, 1811, Cherami to Lieth.

█ These titles are sales, judicial and notarial, and unquestionably are translative of property. The defendants and their authors in title are presumed to be possessors in good faith, and we find nothing to the contrary in the record.

Claim No. 119 of Joseph Cherami, confirmed January 3, 1812, gives its metes and bounds and declares that: "This land was resurveyed in the year 1796 in favor of the claimant by the Surveyor-General of the province; and the claimant having continued to inhabit and cultivate the same ever since the aforesaid period, until on and after the 20th of December, 1803. Confirmed."

Upon the face of the Cherami claim, No. 119, it appears that Joseph Cherami, as far back as the year 1796, was in actual possession of sections 46, 49, and 102, and that he lived upon and cultivated the same "on and after the 20th of December, 1803."

His claim to these lands did not originate at the date of confirmation in 1812, but was open, public, and continuous from the year 1796, and was clothed with all of the external indicia of ownership, possession, habitation, and cultivation. Any one purchasing from him, even as far back as the year 1796, might well have been a purchaser in good faith and a bona fide possessor.

Now as to the titles traced by defendants to Joseph Cherami himself, and which defendants plead in bar, absolute and perpetual, against the title now advanced by plaintiffs, the patents issued in 1897.

By judicial sale to Lieth, May, 1811, and conventional sales to Descorde in 1806 and to Corvasier in 1805, there were alienated and conveyed portions of sections 46, 49, and 102, to which Joseph Cherami then claimed title, which was thereafter confirmed in 1812 by the United States government, and a patent issued to "Joseph Cherami, his heirs, and assigns" in 1897.

The forms and methods of transfer were regular, usual, and adequate to a bona fide and effective transfer of title.

In Landes v. Brant, 10 How. 348, 13 L. Ed. 449, at page 461, the doctrine of relation is applied by the Supreme Court of the United States as follows: "In every case when this court has been called on to investigate titles, where conveyances of lands had been made during the time that a claim was pending before a board of commissioners, and where the claim was ultimately confirmed in the name of the original claimant, the intermediate assignments have been upheld against

the confirmee, and his heirs or devisees, in the same manner as if he had been vested with the legal title at the date of conveyance."

It is also provided in section 2448, U. S. Revised Statutes (43 USCA § 1152), that: "Where patents for public lands have been or may be issued, in pursuance of any law of the United States, to a person who has died [or who hereafter dies] before the date of such patent, the title to the land designated therein shall enure to and become vested in the heirs, devisees, or assignees of such deceased patentee as if the patent had issued to the deceased person during life."

■ Besides plaintiffs are the lawful heirs and descendants of Joseph Cherami and his wife, Gertrude Michel, and claim from them in these suits by inheritance all of the rights and property of every kind belonging to their estates. Plaintiffs have therefore accepted the successions of decedents unconditionally, and are bound by the warranty of Joseph Cherami, whose inheritance they have accepted.

In Stokes v. Shackleford, 12 La. 170, it was said:

"The heir cannot claim against the warranty of his ancestor, but is estopped by it from asserting title, although the title never vested until after the ancestor's death.

"If the vendor sells without title at the time of sale, but acquires title afterwards, it will accrue to the benefit of the vendee.

"The obligation of warranty descends to the heir of the vendor, and one of its first objects is, the buyer's peaceable possession of the thing sold."

See, also, Griffing v. Taft, 151 La. 451, 91 So. 832; Berry v. Wagner, 151 La. 464, 465, 91 So. 837.

■ The confirmations by commissioners of claims of Joseph Cherami, No. 119 and No. 448 in 1812, and the patents issued to him in 1897, must therefore inure to the benefit of holders under the original alienations. This is also true as to the defendants, Elphege Le-Blanc, Leontine Le Blanc, Clemille Barrios, Yves Arceneaux, Pierre Richardelle, Lovincy Theriot, and Mrs. Mary Lambert, wife of Dr. Paul H. Tetrau, who admit possession of specific portions of the lower end of section 46 and have produced their respective chains of title thereto, beginning with Joseph Cherami, as original author, under date of July 19, 1806; and also as to Adam Belanger, who admits possession of a portion of the lower end of section 49 and produces a chain of title back to Joseph Cherami, as original author, under date of May 8, 1805.

Joseph Cherami sold section 46 to Pierre Descorde July 19, 1806. On the same day, Descorde sold it to Farcy Verret, from whom the present possessors hold an unbroken chain.

On May 8, 1805, Cherami sold to Corvasier section 49. He in turn sold it to Vincent Daillais on May 19, 1806, from whom Adam Belanger holds through an unbroken chain.

Defendants Arthur Falgout, Maria Falgout, widow of Melancon, and the Bank of La-fourche (as to not less than 41 or its 45 arpents front) admit possession of portions of section 102, and produce chains of title thereto back to the judicial sale of date May 13, 1811, in enforcement of a mortgage by Cher-

ami himself to one Girod; James Lieth being the adjudicatee.

 Unquestionably, under the cases cited, the confirmations of the claims of Cherami in 1812, and the issuance of the patents to him in 1897 inured to the benefit of the adjudicatee at the sale, James Lieth, and to all of the defendants setting up titles from Joseph Cherami.

We have not been able to detect any defect in the various chains of title presented by defendants to the lands now possessed by them, and their present titles must be maintained as against plaintiffs, claiming as the heirs of Joseph Cherami.

The record in hand fails to establish that either Ragan or Davied is in possession of any of the land to which plaintiffs are entitled to enter into the possession of, under the showing made.

Certain other defendants have denied the possession imputed to them by plaintiffs. The case against these defendants must fall, as plaintiffs have not shown that they are in possession of the parcels of lands as alleged.

The pleas of prescriptive title are common to both suits and depend in the main upon the same evidence. Avoiding detail as to each chain of title offered, and without repeating the observations and reasoning already noted, the examination and study of the titles presented in suit No. 6120 lead to the conclusion that the pleas of prescription of 10 years, tendered by defendants in that suit, are also well taken and must be maintained.

The conclusions reached by us necessitate the dismissal of both suits, and the rejection of plaintiffs' demands in each.

Judgment affirmed.

O'NIELL, C. J., absent.