MADELEINE M. LANDRIEU, Judge.
hln August of 2011, three plaintiffs: Belle Chasse Plantation, L.L.C. (“Belle Chasse”), the Plaquemines Parish Government (“PPG”), and the Board of Administrators of the Tulane Educational Fund (“Tulane”), filed individual possessory actions in the Plaquemines Parish district court against the heirs of Felix Villere (“the Villere heirs”) alleging disturbance of the plaintiffs’? property rights.[1] The defendants, the Villere heirs,- answered claiming adverse ownership of the property by means of federal land patents issued in 2010. The Villere heirs also filed a reconventional demand against the three plaintiffs and against the state of. Louisiana (“the State”), asserting that the State claimed an outstanding real property interest (mineral rights) in certain parcels of the property. Upon motion of the Villere heirs, the cases were consolidated in the district court in 2012. Subsequently, the three plaintiffs and the Villere heirs filed individual cross ■ motions for summary judgment on the issue of ownership. The State joined in the motions for summary judgment filed by PPG and Tulane, asserting that those | ^entities had acquired their parcels subject 'to the State’s reservation of the mineral rights. Following an evi-dentiary hearing, the district court rendered three separate judgments in August of 2014 granting summary judgment in favor of each plaintiff, finding that Belle Chasse, PPG, and Tulane are -the rightful owners of the respective parcels of ’land possessed by each of them and that the State owns the mineral rights on PPG’s and Tulane’s land. In’ each judgment, the trial court denied the cross motion of the Villere heirs and dismissed all their claims with prejudice. The Villere heirs now appeal" those judgments. For the reasons that follow, we affirm the trial court’s judgments.
FACTS AND PROCEEDINGS BELOW
The facts regarding the chains.of title of each party refle'cted in the record are not in dispute.[2] The land parcels that are the subjects of this appeal (hereinafter referred to collectively as “the Property”) were privately owned under French reign in the late 1700s and were included in the mass of land acquired by the. United States in the Louisiana Purchase of 1803.. The Louisiana Purchase treaty recognized the property rights of .inhabitants and the validity of - prior grants and concessions, of land to private persons by the French and Spanish colonial governments.[3] Although the United States encouraged former private owners of land to claim their property under the new government, many failed to do so, apparently because of ignorance, language barriers, economic restraints, and/or the disruption of the Civil War. In *1124 1880, the Louisiana Surveyor General issued a | .¡report identifying two hundred eighty-eight “located yet unconfirmed claims” of original inhabitants, which included the Property in question. Felix Villere’s claim to the Property was identified in the report. The United States Congress, acting upon the recommendation in the report, passed the Act of February 10, 1897, 29 Stat. 517, Ch. 213 (“the 1897 Act”), which expressly acknowledged the private ownership of the original inhabitants to those parcels of land identified in the Surveyor General’s report. Section 3 of the 1897 Act directed the Department of the Interior to issue federal land patents in the names of the original claimants as listed in.the attached report. Approximately one hundred eighteen years later, in 2010, the Villere heirs applied for and obtained federal land patents to the Property, which at that time was in the possession of the plaintiffs. The .patents were issued in favor of “Felix Villere, and to his heirs and assigns.” The legal ownership of the Property is the sole issue in this appeal. .
There is no dispute that neither Felix Villere nor anyone on his behalf ever applied for or obtained a U.S. land patent confirming his ownership of the Property until the Villere heirs did so in 2010. It is also undisputed that the Property was included in Felix Villere’s succession when he died in 1877 and was sold at auction in 1878 to satisfy a debt of the succession. Thereafter, the Property was bought and sold several times until 1942, when the United States expropriated the Property and compensated the record owners at the time. Approximately twenty years later, the United. States transferred' the expropriated parcels to various owners by means of quitclaim deeds. The plaintiffs' each acqnrred. their' respective .parcels of the Property either by quitclaim deed at that time ‘ or through subsequent good faith purchases. Belle Chasse, Tulane, and PPG each possessed as owner their Irrespective parcels in 2010 when the Vil-lere heirs applied for and obtained the land patents.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Age v. DLJ Mortgage Capital, Inc., 2013-1654, p. 3 (La.App. 4 Cir. 8/13/14), 147 So.3d 1186, 1188. "Thus,:the reviewing court generally must determine whether there is any genuine issue of material fact and whether the mover is entitled' to summary judgment as'a matter of law. La. C.C.P. art. 966.
In the case before us, the facts are not in dispute.- The parties filed cross motions for summary judgment seeking the trial court’s determination of the issue of owm ership. Where, as here, there is no dispute regarding material facts, but only the determination of a -legal issue, we apply the de novo standard of review, affording no deference to the trial court’s legal conclusions. Kevin Associates, L.L.C. v. Crawford, 2003-0211, p. 15 (La.1/30/04), 865 So.2d 34, 43.
DISCUSSION
The Villere heirs contend that the United States remained the owner of the Property from the time of the Louisiana Purchase until 2010, when the land patents were issued upon their application. They contend that any purported transfers of the Property prior to the issuance of the patents, including the transfers to the plaintiffs, were null and void. For this reason, the Villere heirs argue that the trial court erred by denying their cross motion for summary judgment and granting the plaintiffs’ motions.
*1125 The argument of the Villere heirs is that, according to the 1897 Act, ownership of each of the properties referred to in the Act was vested in the United Instates from 1803, the time of the Louisiana Purchase, until the United States issued a patent to the original landowner or his heirs. Because here, patents on the Property were not issued until 2010, the Villere heirs contend that all purported transfers of the Property by the private owners from 1803 to 2010 were invalid.
Conversely, the plaintiffs assert that the United States .acquired only publically-owned land (land owned by .the French sovereign) in the Louisiana Purchase, which did not include the Property at issue here because it was privately owned at that time. They further .assert that the 1897 Act was a means of .officially.recognizing the titles of such, private landowners, and that the Act itself confirms those titles without the necessity of formal patents being issued as proof of ownership. They also argue that the patents actually issued in 2010 were issued to “Felix ViL lere, and to his heirs and assigns, forever,” meaning that the patents themselves confirm the titles of the plaintiffs, who are the “assigns” of-Felix Villere. Alternatively, plaintiffs PPG and Tulane argue that they acquired title to their respective parcels of the property by acquisitive prescription, having possessed the property since the early 1960’s.[4]
The trial court rejected the argument of the Villere heirs, finding that the. 1897 Act itself had the effect of confirming title in the assigns of Felix Villere, which owned the Property at the time the Act was passed. Because the plaintiffs’ respective chains of title proceeded from those assigns, the trial court found the plaintiffs to be-the legal owners of their respective parcels of the Property. .
|flThe interpretation and effect of the 1897 Act is at the heart of the issues presented in this appeal. To determine the correctness of the trial court’s decision, we.first consider the language of the Act. The 1897 Act in its entirety was quoted by the United States Supreme Court in 1905:
■An Act to Quiet Title and Possession with Respect - tó Certain Unconfirmed and Located Private Land Claims in the ■- State of Louisiana:
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That all the right, title, and interest of the United States in and to the lands situated in' the state of Louisiana, known as the' Ideated but unconfirmed private land claims therein, aggregating about eighty thousand acres, and specifically described in the list or tabular statement accompanying the report, dated February nineteenth, eighteen hundred and eighty, made by the surveyor general of Louisiana to the Commissioner of the General Land Office, under a resolution of the United States Senate of December second, eighteen hundred and- seven•ty-nine, and which report and list were communicated to the Senate by the Secretary of the Interior on March eighth, eighteen hundred and eighty, as Senate Executive Document numbered one hundred and eleven, Forty-sixth Congress, second session, shall be, and. the same are hereby, directed to be granted, released, and relinquished by the United States, in fee simple, to the respective owners of the equitable titles thereto, *1126 and to their respective heirs and assigns forever, as fully and completely, in every respect whatever, as could be done by patents issued therefor according to law.
‘Sec. 2. That nothing contained in. this act shall in any manner abridge, devest, [sic] impair, injure, or prejudice any valid right; title, or interest of any person or persons in or to. any portion or part of the lands mentioned in said first section, the true intent of this act being to relinquish and abandon, grant, give, and concede, any and all right, interest, and estate, in law or equity, which the United States is or is supposed to be entitled to in said lands, in favor of all persons, estates,, firms, or corporations who would be the true and lawful owners of the same under the laws of Louisiana, including the, laws of prescription, in the absence of the said interest and estate of the United States.
‘Sec. 3. That the Department of the Interior shall cause patents to issue for such lands, and such patents shall issue in the name of the original claimant as appears in the list or schedule aforesaid, and when issued shall be held to be for the use and benefit of the 17true and lawful owners as provided in sections one and two of this act.
Corkran Oil & Dev. Co. v. Arnaudet, 199 U.S. 182, 183-84, 26 S.Ct. 41, 41-42, 50 L.Ed. 143 (1905) (Emphasis supplied). '
We conclude that the language of the Act supports the trial court’s interpretation. Section 1 of the Act directs that the properties listed in the Surveyor General’s report be released to their respective owners, their heirs and assigns, “as fully and completely ... - as could be done by patents issued therefor according to law.” The phrase “as could be done by patents” indicates that, although thé issuance of patents is authorized in Section 3, their issuance is not necessary to confirm ownership because the express purpose of the Act is for the United'States government to formally acknowledge the titles of the private landowners. This purpose is reiterated in Section 2, which 'states that the “true intent” of the Act is to relinquish' and concede “arty and all right ... which the United States is or is supposed to be entitled to in said lands, in favor of ... the true and lawful owners.”-'
' The entire tenor of the 1897 Act indicates that the United States is not giving up properties that it owns, but rather is confirming that it has no claim to said properties, which- are truly and legally owned by others. Nothing in the 1897 Act suggests that the issuance of a land patent pursuant to the Act is a prerequisite to ownership. Because ownership of the properties was already vested in the private landowners, we interpret Section 3, directing the Department of the Interior to issue patents, as merely providing a mechanism by which the private landowners could obtain written proof of their titles. Therefore, the sale of the Property in 1877 to satisfy the debts of Felix Villere’s succession was valid, as were the subsequent transfers that form the plaintiffs’ chains of title. The plaintiffs qualify |sas “assigns” of Felix Villeré. The 2010 patents, although applied for by the Villere heirs, do not prove the heirs’ ownership relative to the plaintiffs because the patents are issued to the ■ heirs and assigns of Felix Villere.
The trial- court’s interpretation of the 1897 Act is also consistent with the actions of all parties concerned both prior' and subsequent to the Act’s passage. The 1877 transfer presumed Felix Villere then owned the Property, not the United States. Moreover, the United States *1127 would have had no need to expropriate the Property in 1942 had it already owned the Property.
More importantly, the trial court’s decision in this matter is supported by the law and jurisprudence, as well as the evidence in the record. The plaintiffs submitted into evidence French documents showing the Property was privately owned from the 1700s. It is well-established that the Louisiana Purchase treaty recognized as valid the property rights of inhabitants whose land had been granted to them by either the Spanish or French colonial governments. 1 La. Pract. Real Est. § 2:2- § 2:3. When Louisiana was admitted to the Union in 1812, most of the land located in the state was public rather than private, and “[t]hus, title to all property that was public at [that] time ... emanated from the United States government.” Id. § 2:3. The plaintiffs also introduced a letter written March 8, 1880 from the Surveyor General to the United States Senate, which explains that the United States had always intended to honor the claims of private landowners that preceded the Louisiana Purchase, but language barriers and economic hardships had made it difficult for the private landowners to come forward and assert their claims. A list of privately-owned properties, including the Property in question, accompanied the letter, in which the Surveyor General recommended that Congress pass an act to recognize and confirm the titles of the private landowners. laThe evidence demonstrates that the 1897 Act was passed to effectuate the Surveyor General’s recommendation.
The trial court’s decision in this case is unequivocally supported by the relevant jurisprudence. The plaintiffs have cited numerous eases holding that a purchaser by bona fide conveyance prevails over an heir claiming title by virtue of a patent issued to his ancestors. These cases uniformly hold that a federal patent inures to the benefit of the transferees of the patent holder. For example, in Cherami v. Cantrelle, 174 La. 995, 142 So. 150 (1932), the Louisiana Supreme Court held that a patent issued in 1897 to Mr. Cherami for land he had possessed since the early 1800s confirmed title in the assignees of interests originally traceable back to Mr. Cherami, rather than in his heirs. Similarly, in Sorapuru v. Humble Oil & Refining Co., 529 So.2d 1372 (La.App. 5th Cir.1988), Mr. So-rapuru purchased land from the United States in 1841, but did not obtain a federal patent at that time. Mr. Sorapuru subsequently mortgaged the land, and -in 1850, the land was- sold to satisfy the mortgage debt. As in the ease before us, the heirs of Mr. Sorapuru obtained , a federal patent more than one ‘hundred years later, in 1953¡- In 1982, the succession of Mr. Sora-puru claimed legal title to the land based upon the patent. The possessors of the land, whose title traced back to the purchaser at the 1850 foreclosure sale, filed an exception of no right of, action. The succession representative argued that the title had remained with the United States until the issuance of the patent in 1953, and that, therefore, the mortgage and all the transfers following Mr. Sorapuru’s purchase of the land were invalid. The trial court disagreed, maintaining the exception. The appellate court affirmed, holding that the patent inured to the benefit of Mr. Sorapuru’s -assignees/ transferees rather | mthan to his heirs. Id: at 1373. See also, Landes v. Brant, 51 U.S. 348, 373-75, 10 How. 348, 13 L.Ed. 449 (1850).
Accordingly,-we affirm the,trial court’s rulings granting summary judgment confirming title in favor of the plaintiffs, denying, i the cross , ¡.motion for summary judgment filed by the Villere heirs, and dismissing with prejudice, .all claims of the Villere heirs.[5]
AFFIRMED

.The three actions involved separate but contiguous parcels of property, all of which are located in Plaquemines Parish.

. The facts. recited infra are evidenced by documents introduced into the recqrd by the parties at the heating and are not in dispute.

. See La. Prac. Real Est. § 2:2 — 2:3 (2d, ed.)

. These plaintiffs argue that they possessed the property in good faith with just title for more than ten years. See La. C.C. arts.'3473-3485. Alternatively, they argue they acquired: the property simply by possessing it for more ' than thirty years. See La. C.C. arts. 3486-3488. ‘ '

. In light of this disposition/ we pretermit discussion of whether, under these facts, the plaintiffs would have acquired ownership of the Property by means of prescription.