Arnoult<br>*v.*<br>New Orleans.

---

Thomas Hubnall *v.* Watt & De Saulles and Robert Y. Jones.        11    57
                                                                 108   285

An Act under private signature has no date against third persons; but a date may be given to such an instrument by evidence *dehors* the instrument itself.

There is nothing in the Registry Laws which precludes a title not registered from being the basis of the prescription mentioned in Article 3444 of the Code, when it is accompanied by actual possession and the incidents prescribed in Article 3453.

APPEAL from the Fifth District Court of New Orleans. *Augustin*, J. *Henderson*, Jr., for plaintiff. *Benjamin, Micou & Finney*, for *Jones*. *Taylor*, for warrantor.

Buchanan, J. (Merrick, C. J., absent.) Plaintiff has judgment against the defendant, *Robert Y. Jones*, for the possession of a slave named *Henry*, and in default of said slave being delivered up, then for $1,000 as his value, and for $25 per month from the date of judgment, as his hire. There is also judgment in favor of *Jones* against his warrantors, *George A. Botts* and *George M. Bayley*. *Jones* and *Bayley* have appealed.

In this court the appellant *Jones* contends that the suit is barred by the prescription of five years, under Article 3444 of the Code, and should the plea of prescription not prevail, that the slave *Henry* is valued too high by the judgment.

The plaintiff has answered the appeal, and prayed for an amendment of the judgment in his favor, by allowing him hire for the slave *Henry* from the institution of the suit, instead of from the judgment.

Defendant holds by a conveyance *sous seing privé* from *Botts*, not recorded. *Botts's* title was by notarial act of sale from *Bayley*, of date September 3d, 1845, not registered in the office of the Register of Conveyances. *Bayley* bought the slave from *J. A. Brown* by act under private signature, not recorded, on the 20th April, 1844.

8

The three sales in question were made in New Orleans, and the District Judge was of opinion that their want of registry prevented them from constituting a foundation for the prescription of five and ten years—the short prescription by which the title of slaves is acquired to one who possesses with a title translative of property. We have come to a different conclusion. It is very true that an act under private signature has no date against third persons, and that two of the conveyances in defendants' chain of title are of that description. But a date may be given to such an instrument by evidence *dehors* the instrument itself; and in the present case the date of the conveyance from *Brown* to *G. W. Bayley*, (April, 1844,) is fixed by the testimony of two witnesses, *R. H. Bayley* and *Richard Beck*, who also prove the open and uninterrupted possession of *Bayley* under that title. In relation to the conveyance from *Botts* to *Jones*, there is the following admission in the record, made on the trial of this cause in the court below, 1st February, 1854: " It is admitted that *Jones* would prove a pri- vate title from *Botts* to him of the slave *Henry*, of date about September, 1845, the production of which paper is dispensed with ; the said title being the title upon which *Jones* relies for his title to the property, and under which he holds possession to the present time."

*We are of opinion, after a careful examination of the law and of the authori- ties cited in argument, that there is nothing in the Registry Laws which precludes a title, not registered, from being the basis of the prescription mentioned in Article 3444 of the Code, when it is accompanied by actual possession, with the incidents prescribed in Article 3453. This suit was instituted the 14th Novem- ber, 1850 ; and actual and uninterrupted possession is shown in the defendant and warrantors from April, 1844, to that time, being six years and seven months. The defendants have therefore acquired title by prescription to the slave, unless the plaintiff has shown himself to have had a residence out of this State. In his petition he styles himself a resident of New Orleans; but his counsel relies upon the evidence of plaintiff's brother-in-law, *Simons*, who proves that in 1837 and 1838 plaintiff resided in Tennessee, and that in 1838 or 1839 he removed to Missouri. He has also offered two witnesses named *Waters*, one of whom, *Thomas Waters*, swears that in December, 1844, the plaintiff resided in St. Louis, Missouri, and that in March, 1845, he was keeping store in St. Louis. This witness also declares that at this last date the slave *Henry* was hired out in Boonsville, Missouri. *Charles Waters* swears positively that plaintiff resided *in Boonsville* in December, 1844. Apart from the discrepancy in the testimony of these witnesses as to plaintiff's residence in December, 1844, which creates a doubt of the correctness of their recollection of dates, we find it proved beyond question that the slave was in New Orleans in April, 1844—a fact that corroborates the evidence of a witness, *Henry E. Moore*, who swears that he came down the river in company with plaintiff and the slave *Henry*, in the spring of 1843, or it might have been the following year, 1844. It is also proved that plaintiff resided in New Orleans in 1845 and in 1846, and that in 1847 he went to the Mexican war, whence he returned in the latter part of that year or early in 1848.

On the whole, the plaintiff has failed to prove satisfactorily a residence any- where out of Louisiana within the five years next preceding the institution of this suit. The nearest approach to it is in the testimony of *Thomas Waters*, who says: " He (the plaintiff) came here a short time in 1845, but returned to St. Louis."

The plaintiff has been afforded the opportunity of two trials, and ought to have produced something more satisfactory than such loose and vague testimony, if in truth he had a residence elsewhere than in this State, within five years previous to the institution of the suit. The burden of proof is upon the plaintiff to show an exemption from the prescription applicable to residents; and in this case the propriety of such a rule is peculiarly manifest.

Judgment of the District Court reversed, and judgment for defendants, with costs in both courts.