WILLIAM SPENCER *v.* HENRIETTA AMIS, Executrix and Tutrix.

A judicial mortgage affects the debtor's slaves attached to a plantation in a parish where the judgment was not recorded, from the date of the registry in the parish of the debtor's domicil. C. C. 3318, 3328, 3317, 3296, 3217.

APPEAL from the District Court of Madison, *Farrar,* J.

*Alexander Steele* and *J. B. Lyman,* for plaintiff and appellant. *Stacy, Sparrow & Snyder,* for defendant.

VOORHIES J. This is an hypothecary action based on the following state of facts: On the 12th of June, 1843, *Goodwin, Fisher* and *Spencer* obtained for the use of the plaintiff a judgment against *L. A. Collier* in the Ninth District Court of this State for the sum of $1916 80, with eight per cent. per annum interest thereon from the 7th of October, 1841, until paid, and costs of suit, which judgment was duly inscribed in the office of the Recorder of Mortgages of the parish of Concordia, the domicil of *Collier,* and reinscribed in the same office on the 19th of June, 1853. *Collier* then owned and possessed a plantation in the parish of Concordia, where he continued to reside until January, 1844. On the 16th of March, 1841, he acquired by purchase at Sheriff's sale a plantation and slaves in the parish of Madison, which he continued to own and possess until the 9th of January, 1844, when they were sold by the Sheriff, under an execution against him, to *Amis* and *Featherston* for the price of $25,866 66. The interest of *Featherston* therein was subsequently conveyed to *Junius Amis,* who died in 1852, leaving a widow and several minor children as his legal heirs. After satisfying the writ against *Collins,* and making an allowance for the value of a portion of the property from which *Amis* was evicted subsequent to the sale, there remained a surplus of $13,739 66 in the hands of said *Amis* to pay the debts of *Collier.* Out of this surplus, *Amis* applied the sum of $11,000 to the payment of the claim of the Planters' and Commercial Bank of Natchez, secured by a mortgage originally given by *Hunter & King,* from whom *Collier* derived his title under the Sheriff's sale, leaving still in his hands, as cash, a balance of $2739 66, on the 9th of January, 1844. Other mortgages existed on the property; but it is evident could not affect the plaintiff's rights, as more than ten years had elapsed since their inscription, and they do not appear to have been reinscribed.

The admission of the parties shows, that the slaves, on which the plaintiff seeks to enforce his judicial mortgage, have been employed in cultivating the plantation acquired by *Collier* at Sheriff's sale, in the parish of Madison, ever since the year 1841; and that said plantation and slaves belonged to the community of acquets and gains which existed between the late *Junius Amis* and his surviving spouse, *Henrietta Amis,* natural tutrix of her minor children, issue of their marriage.

It is contended by the defendants that the inscription of the judgment against *Collier* in the parish of Concordia, the place of his domicil, could not affect his slaves attached to his plantation in the parish of Madison, that in order to have effect, such inscription should have. been made in the latter parish, where the plantation is situated; whilst on the other hand it is insisted that no mortgage unless recorded in the parish in which *Collier* had his domicil could affect his

SPENCER
v.
AMIS.

slaves, and hence the plaintiff's mortgage was entitled to precedence even over the execution under which the slaves were sold to *Amis* in 1844.

The Civil Code, Article 3318, declares: "The inscription of mortgages only binds the property of the debtor, when it has been made, with regard to immovables, in the office of mortgages for the parish where the property lies; and with regard to slaves, in the office of mortgages for the parish where the debtor has his domicil or usual residence. If the debtor has immovable property lying in more than one parish, the inscription ought to be made in the office of mortgages for each of them." See also C. C. 3328, 3317, 3296.

Under this Article, in order to bind slaves, it is perfectly clear that the inscription of a conventional or judicial mortgage must be made in the office of mortgages for the parish where the debtor has his domicil or usual place of residence. But it is insisted that the exception to this general rule exists in cases where slaves are attached to and permanently employed in the cultivation of a plantation; and have become immovables by destination or operation of law.

The Articles of the Civil Code on which the defendants rely, do not, in our opinion, warrant such a conclusion. In the division of things in the Civil Code, " slaves, though movables by their nature, are considered as immovables by the operation of law." (Art. 461). Thus classed, independently, it is evident that they cannot be considered as falling within the scope of Article 459, or the category of things which become immovables by destination: Article 459 applies, we think, exclusively to movables placed by the owner for the service and improvement of a tract of land, and to such also as are attached permanently to the tenement or to the buildings thereon erected. A destinction between immovables and slaves in relation to mortgages appears to be carefully observed in our different statutes upon the subject, and cannot be disregarded by us. Moreover, the proposition assumed by the defendants is sought to be deduced merely from inference and, as we conceive, in opposition to the clear letter and spirit of the law.

It is proper to observe that the only question strictly before us is, whether a judicial mortgage affects the debtor's slaves in another parish from the date of its registry in the parish of the debtor's domicil, and we hold that it does. There is no conflict of mortgages here; and we are not called upon to say whether a vendor's privilege might not override this judicial mortgage by registry in the parish where the plantation to which the slaves belonged was situated, under the following Article of the Code: "The privilege granted to the vendor on the immovable sold by him extends to the *slaves*, beasts, and agricultural implements attached to the estate and which make part of the sale." C. C. 3217.

It is, therefore, ordered and decreed, that the judgment of the court below be avoided and reversed, that the plaintiff's judicial mortgage on the slaves described in his petition be recognized as valid, and that in default of the payment of the judgment in his favor against said *L. A. Collier*, including principal, interest and costs, said slaves be seized and sold according to law to satisfy the same, and that the defendants and appellees pay the costs of both courts.