## JACKSON v. GORDON et al. (SANDERS, Intervener).

### No. 1914.

Court of Appeal of Louisiana. First Circuit.

Feb. 15, 1939.

Dubuisson & Dubuisson, of Opelousas, and Earl Edwards, of Marksville, for plaintiff-appellant.

Emmet Alpha, of New Orleans, for defendant-appellant.

Pavy & Pavy, of Opelousas, for intervenor-appellant.

LE BLANC, Judge.

This suit involves the title to and ownership of a certain forty acre tract of land situated in the Parish of St. Landry which is fully described in the plaintiff's petition as follows:

"A certain lot of land containing forty acres more or less, situated near the Atchafalaya River, Parish of St. Landry, Louisiana, being the Southwest Quarter of Northwest Quarter of Section 35, in Township 2 South Range 6 East. Being the same property acquired by vendor of John Harmonson, December 16, 1889, as appears by sale recorded in Conveyance Book Y No. 2 at pages 528 and 529, Recorder's office, Parish of St. Landry."

The plaintiff is the son of Needham E. Jackson who he alleges purchased the property by authentic act of sale from Gilbert Sanders on January 3, 1891. The chain of title outlined in the petition traces the property back to the United States government.

Plaintiff alleges that neither his father nor mother, Mary Lucas, ever disposed of the property or any part of it while they

lived and that as their sole heir he became, after their deaths, and now is, the true and lawful owner thereof.

He avers that after the death of Gilbert Sanders, his father's author in title, Kate Hayes, widow of R. A. Gordon, and the administratrix of his estate, acting in her capacity as such acquired by various transfers all set out in the petition, the entire interests of the heirs of said Gilbert Sanders and his wife, Hester Sanders, in their successions, and that in all of the transfers made there was described and attempted to be conveyed the aforementioned property which Gilbert Sanders had previously sold to his father Needham Jackson. He sets out four different transfers claimed to have been made to the estate of R. A. Gordon purporting to convey the interests of the heirs of Gilbert Sanders and his wife in a certain described one hundred and sixty acre tract of land which embraced the forty acre tract described in his petition and from which latter tract, he avers, no title could have been conveyed for the reason that the said heirs could not have acquired any interest from their father therein inasmuch as he had divested himself of title by the sale which he had made to Needham Jackson. In spite of this he alleges that the administratrix of the succession of R. A. Gordon and R. L. Gordon, sole heir of R. A. Gordon, who is also made party defendant, are claiming title to the said forty acre tract by virtue of the transfers from the heirs of Gilbert Sanders.

Plaintiff avers that he is not in the actual possession of the said property, and, on information and belief, he alleges that neither are the said defendants in possession thereof and that he brings this action under the authority of Act No. 38 of 1908 which provides for the adjudication of title to real estate when neither the plaintiff nor the defendant is in actual possession. In the alternative he avers that if the defendants be shown to be in possession, that the action be considered as petitory in character and that he be decreed to be the owner of the property.

It may well be stated at this point that on the day of trial in the lower court at plaintiff's own suggestion a motion filed on behalf of Robert L. Gordon to be dismissed as a party defendant was sustained by the district judge.

The defendant estate through Mrs. Gordon, administratrix, filed an answer in which she put at issue first the legitimacy of the plaintiff on the ground that his father Needham E. Jackson and Mary Lucas had never been married, the only valid marriage Needham Jackson having ever contracted being with Mary V. Sanders, a daughter of Gilbert and Hester Sanders, and that the property described in plaintiff's petition having been acquired by Needham Jackson during that marriage it fell into the community then existing between them. Defendant then sets out an acquisition of the interest of Mary Sanders by the Gordon estate, as well as the interest of the other heirs of Gilbert and Hester Sanders, and with regard to the interest of Mary Sanders she alleges that as there were no children born of her marriage with Needham Jackson, she had acquired the whole of the forty acre tract after his death, which would none the less make the estate the owner thereof under the title acquired from her. She avers that the estate of R. A. Gordon has been in the actual, open and peaceable possession of all the property in controversy for more than ten years, in good faith, and she therefore pleads the ten years' prescription as to the interest acquired from those of the Sanders heirs reckoning from March 1, 1927.

To the proceedings as thus made up at that time then came and appeared Mary V. Sanders as intervenor claiming the entire forty acre tract of land in controversy and alleging her ownership of one-half thereof as widow in community of Needham E. Jackson and as having acquired his half interest in the community in default of any legitimate heir of his as she avers that the plaintiff, Charles Jackson, was an illegitimate child. As an alternative she pleads that she was left a widow in necessitous circumstances of Needham Jackson and urges therefore that the property should be sold in order to satisfy her claim of $1,000 which the law, under Civil Code, Article 3252, accords her. She denies that she ever conveyed her interest to the Gordon estate in this particular forty acre tract and that all she ever intended to and did convey by any sale to that estate was her undivided interest in the estate of her deceased father, Gilbert Sanders. In the event it be held that her sale of that interest embraced the forty acre tract, then she pleads that it be set aside on the ground of lesion beyond moiety. The prayer of her petition is for judgment decreeing her to be the sole owner of the forty acre tract of land in dispute.

The allegations in the petition of intervention were all put at issue by an answer filed thereto by the defendant administratrix on the day of the trial of the case in the court below. The plaintiff had not on that day prepared his answer to the intervention but it was agreed that the case should be taken up and heard as though an answer had been filed with the understanding that plaintiff be given a delay in which to prepare and file the same. In his answer which was subsequently filed plaintiff denied the validity of his father's marriage to the intervenor, Mary V. Sanders, and consequently denied that she had any interest whatever in the forty acre tract of land. In the alternative and in the event it be held that her marriage to Needham Jackson was valid he then plead her renunciation of the community in his father's succession proceedings made by her for the purpose of claiming the $1,000 as widow in necessitous circumstances. To her alternative claim of $1,000 he pleads two marriages by her subsequent to that with his father by which, he contends, she has forfeited the same and he also pleads the prescriptions of three and ten years against the same.

On these multiple and highly conflicting and controverted issues the district judge, after trial and submission of the case, rendered judgment recognizing the plaintiff, Charles Jackson, and the intervenor, Mary V. Sanders, as owners of the property in the proportion of an undivided one-half each, and he decreed accordingly. The defendant took both a suspensive and a devolutive appeal to this court and later both the plaintiff and the intervenor appealed devolutively.

The district judge assigned written reasons in which he thoroughly discussed the case from every standpoint as presented on the part of all the litigants. So impressed are we at the soundness of his reasons by which he disposes of all the issues before him that we take the liberty of quoting them in full, as follows:

"The court takes up first the two most important factual questions involved in the case, namely, the alleged marriages of Needham E. Jackson, first to Mary Lucas and later to Mary V. Sanders, known throughout the testimony as 'Vicey.'

"The Court listened attentively to all of the witnesses and closely observed their demeanor on the stand, and has carefully considered all of the evidence in connection with the arguments of counsel and the seven briefs filed,—two by plaintiff, four by defendant and one by intervenor. There is some evidence to the effect, mostly of a negative nature, that Mary Lucas was not married to Needham Jackson, but the court is thoroughly satisfied that Needham E. Jackson and Mary Lucas were married in 1871 in a ceremonial marriage performed by Rev. Patrick Harrison; and that the plaintiff, Charles Jackson, is their legitimate son and sole heir. A great preponderance of the evidence proves the marriage. The court is equally well satisfied that while still married to Mary Lucas, Needham E. Jackson married Mary V. Sanders in 1882 by a ceremonial marriage performed by Rev. Winn Latham; that Mary V. Sanders was in good faith and under the belief that Needham E. Jackson was not married to any other woman when she married him; and that no children were born of their marriage.

"The court also finds from the evidence that after Mary Lucas and Needham E. Jackson separated, she lived with Jeff Snow and with Sam Washington, as wife and husband, and bore children for each of them; but that she was not married to either of them. Needham E. Jackson was her first husband, and as heretofore stated, the court is satisfied that, following the usual custom among the negroes of that day, especially the women, she actually married her first husband Needham E. Jackson; but after they separated, as could be expected she was not so particular about her subsequent 'husbands'. Needham E. Jackson himself thereafter had another 'wife', named Hannah Johnson, before he subsequently married Mary V. Sanders. With Hannah Johnson he had Johnnie Jackson, who testified at the trial, and another child named Mose; but Needham E. Jackson was not married to Hannah Johnson. According to Johnnie Jackson, his mother, Hannah Johnson, had previously married another man before Needham E. Jackson and had children for him, but the evidence does not disclose whether or not she was lawfully married to that man. At any rate, it has been established by the evidence that Needham E. Jackson had no children with Mary V. Sanders and no legitimate children with any other woman but Mary Lucas; so the plaintiff, Charles Jackson, is his only legitimate child.

■ "From the foregoing, the court concludes that Mary Lucas was the lawful

wife and Mary V. Sanders was the putative wife of Needham E. Jackson when the forty acres of land in suit were acquired by Needham E. Jackson on January 3, 1891; and that upon the death of Needham E. Jackson, which appears to have occurred in Dec., 1891, his two wives each took one-half of the said land. See Civ.Code, Art. 117, Dart's 1932, and cases cited therein.

." 'When a man contracts a second marriage while his first wife is living and undivorced, and dies leaving community property acquired during the second marriage, contracted in good faith, the estate will be divided equally by the two wives. Jerman v. Tenneas, 44 La.Ann. 620, 11 So. 80; Waterhouse v. Star Land Co., 139 La. 177, 71 So. 358.

" 'Where decedent had married and afterward contracted second marriage without first marriage having been dissolved, second wife having no certain knowledge of existence of first marriage, heirs of each wife, who both died after husband's death, were entitled to half of community property. Ray v. Knox, 164 La. 193, 113 So. 814.'

"Accordingly, when Mary Lucas died, the plaintiff, Charles Jackson, inherited her one-half of the forty acres of land in suit, and the other one-half belongs to Mary V. Sanders, unless either or both have lost or disposed of their respective shares therein, and the court now addresses itself to this question.

"Defendant claims title by purchase from the heirs of Gilbert Sanders under two sheriff's deeds and three other deeds, as heretofore enumerated. In its original brief its counsel says in part:

" 'The real presumption of law on a question like this is that: by some agreement between Needham Jackson and Gilbert Sanders, the sale to Needham Jackson was annulled, like a retrocession to Gilbert Sanders, which may never have been recorded, and which was lost or destroyed in the frequent river floods of that region; the conduct of both Charles Jackson and Vicey Jackson· in never claiming the land through these years indicates that a retrocession was signed.'

"If there were any evidence in the record to prove such a fact, then, of course, defendant would have a perfect title to the entire forty acres of land, for Needham E. Jackson would have left no property to

be divided between Mary Lucas and Mary V. Sanders. As a matter of fact, 'Vicey' has always claimed the forty acres of land which her husband bought from her father. She claimed it during the lifetime of R. A. Gordon and has continued to claim this land,· even at the time she sold her interest in her father's estate to Mrs. Gordon. The latter fact is admitted even by Mrs. Gordon and her witnesses. As to Charles Jackson, he probably did not know that his father had bought this land, for it was bought while his father was living with 'Vicey'; and since nobody claimed it adversely until the Succession of Gordon began to buy interests in the property of Gilbert Sanders under descriptions which embraced or included, the forty acres, there was no occasion for him to go to court to assert his ownership. Certainly there is nothing in the record showing that the sale from Sanders to Jackson was ever annulled or that there was anything 'like a retrocession' that took place; and, as a matter of fact, defendant's pleadings do not set up any such proposition, so the court rejects this contention.

"As against the plaintiff, Charles Jackson, defendant pleads the prescription of ten years under Civil Code, Article 3478 et seq. for the two-fourths which it acquired from Mose and J. B. Sanders by the sheriff's deeds of March 1, 1927, recorded September 6, 1927. Plaintiff contends that since his suit was filed on June 9, 1937, the plea of prescription is not good, because when he filed his suit ten years had not elapsed since registry of the deeds, as required by Civil Code, Articles 2264 and 2266. Counsel for each party points to court decisions which they contend support their respective positions as to whether or not registry is necessary for the prescription of ten years. The court is inclined to agree that plaintiff's cited authorities should prevail, but because of the view hereinafter expressed, on the absence of another element necessary for the prescription to apply, namely, good faith, it is not necessary for the court to decide which contestant is correct on the question of registry as affecting prescription.

"Since the intervention was not filed until October 29, 1937, defendant has pleaded against the intervenor, Mary V. Sanders, the ten years' prescription, not only as to the two-fourths acquired from Mose and J. B. Sanders, but also as to the other fourth (two-eighths) acquired from Eu-

gene James and Lester Foster on August 31, 1927. In answer to this, the intervenor contends that since the suit of the plaintiff interrupted prescription as to the plaintiff, it also interrupted prescription as to the intervenor under Civil Code, Article 3518, and her counsel cites certain court decisions to support this contention. Although the court is inclined to agree with this contention, again it is not necessary for the court to decide the point. For the reason indicated heretofore, and hereafter more fully expressed, the court rejects the plea of prescription as against the intervenor because of the absence of the element of good faith required to support it, in the same manner that it rejects the plea as against the plaintiff.

 "Article 3478 of the Civil Code provides that: 'He who acquires an immovable in good faith and by just title prescribes for it in ten years'. Elaborating on this, Article 3479 provides that: 'To acquire the ownership of immovables by the species of prescription which forms the subject of this paragraph, four conditions must concur: 1. Good faith on the part of the possessor. * * *.' It is the firm opinion of the court that a person's property should not be taken from him by prescription unless every element or condition required by the law has been met and complied with. Of course, the court realizes that good faith is always presumed in matters of prescription, and that he who alleges bad faith in the possessor, must prove it. Civ.Code, Art. 3481. Notwithstanding this, the court has reached the conclusion in this case that there is an absence of the legal good faith required for the prescription pleaded.

 When Gilbert Sanders, father of Mary V. Sanders, died in 1908, R. A. Gordon applied to be, and was duly appointed, administrator of his estate. Mr. Gordon remained as administrator from February 9, 1909, until his own death, on August 22, 1926, or for a period of over seventeen years. In his petition applying for appointment, he recites that Gilbert Sanders owned about 150 acres of land. In the inventory taken November 4, 1909, the land is shown as '160 acres, improved, bounded as follows: North P. W. Lafleur, South R. A. Gordon, East W. B. Rogers and others, West Joe and Sam Vanella,' which, the court may add, is the same description that was used in all of the deeds heretofore referred to. About two years after

his appointment, that is, in May, 1911, R. A. Gordon sought and obtained an order for the sale of the Gilbert Sanders property. The order was signed May 20, 1911, and a commission issued the same day ordering the sale. But no sale was ever made. Mary V. Sanders testifies most positively that she learned that Mr. Gordon was advertising a sale of the property, and that the description in the newspaper included the forty acres which she claimed; so she went to Mr. Gordon and protested. She further testifies that Mr. Gordon went to Opelousas and investigated the matter, and came back and told her that she was right,—that she did own forty acres included in the advertised property; and the sale was stopped. She was severely cross-examined by defendant's counsel, but she was unshaken in the gist of her testimony. Because of her age, and possibly due to a little deafness, under the severity of the cross-examination she may have become somewhat confused as to details about dates and figures, but the court believes she told the truth about the matter of the advertisement. She testifies that shortly after the occurrence, she herself went to Opelousas to see an attorney, Mr. Veazie, to open the succession of her husband; but that because she did not have the money to go through with it, she did not get the estate settled. The evidence shows that the succession of Needham E. Jackson was actually opened by Mr. Veazie on Sept. 9, 1911,—corroborating her testimony on that point. Not only this, but the petition in that succession refers to forty acres of land belonging to Needham E. Jackson, and in the order for the inventory R. A. Gordon was named one of the appraisers. All of this, together with the fact that Vicey was a neighbor of the Gordons, did their washing at times, together with her testimony that she told Mr. Gordon 'fifty times' about her land, and that after his death she wanted to 'swap' lands with Mrs. Gordon, and the other evidence in the record, satisfies the court that Mr. and Mrs. Gordon both had sufficient notice or knowledge of her claim to negative the good faith required for the plea of ten years' prescription interposed herein.

"After the death of Mr. Gordon, Mrs. Gordon applied on March 18, 1927 to be appointed administratrix of the succession of Gilbert Sanders. It is to be noted here that prior thereto, or on March 1, 1927, the sheriff had made a sale of the interests of Mose and J. B. Sanders in their father's

property, but the deeds were not recorded until September 6, 1927. Likewise, the Succession of R. A. Gordon purchased the interests of the Fosters on August 31, 1927. On the other hand, the sale from Mary V. Sanders was not made until May, 1937, although there is testimony that there may have been a sale in 1933, which was lost or misplaced and never recorded. At any rate, the court is of the opinion that the repeated protestations by 'Vicey' about her forty acres had some connection with the delay in acquiring her interest in her father's estate; or, that the delay corroborates her testimony about the claims she made to Mrs. Gordon when she approached 'Vicey' to buy her interest. Since the court is of the opinion that Mr. Gordon had knowledge that 'Vicey' was claiming a part of the Sanders tract, by virtue of her husband's having purchased forty acres from her father,—which could not be any other land but a part of the 160 acres which Mr. Gordon was administering for the estate of Gilbert Sanders,—that knowledge must be imputed to the Succession of R. A. Gordon, and this negatives the good faith which in law would be required of the Succession for its plea of prescription herein. See Kernan v. Baham et al. 45 La.Ann. 799, particularly page 811, 13 So. 155. But aside from this, the court is also of the opinion that Mrs. Gordon, as administratrix of the Succession of R. A. Gordon, is to be charged with sufficient knowledge of the claim of 'Vicey' to negative the legal good faith essential to support a plea of ten years prescription.

■ "The court finally takes up the question of the renunciation by Mary V. ('Vicey') Sanders of the community of Needham E. Jackson and also her alternative claim for the widow's homestead. The contention that she renounced is based on her petition opening the Estate of Needham E. Jackson in 1911. Article 1017 of the Civil Code provides that: 'The renunciation of a succession is not presumed, it must be made expressly by public act before a notary, in presence of two witnesses.' Also, Article 2415 of the Civil Code prescribes that: 'The renunciation of the partnership by the wife must be made before a notary or a parish recorder, and two witnesses.' However, Counsel for plaintiff points to the decisions of Carter et al. v. Fowler et al., 33 La.Ann. 100, and Union Bank v. Choppin et al., 46 La.Ann. 629, 15 So. 304, to the effect that the re-

nunciation may be made also by pleadings filed in court, and not only by notarial act.

"It is true that the cases cited are to that effect, but the court does not believe that they are controlling under the facts in this case. In the Choppin case, one of the undivided owners of certain property had cited the other owners, the Choppins, for the purpose of obtaining a judicial partition of certain property. One of the Choppins did not answer, and a judgment by default was rendered against him. Subsequently he died, and upon proper motion his legal representatives were made parties to the partition suit. Then one of these representatives died without having answered. Whereupon upon proper motion her heirs were made parties. The case was tried and decided and went up on appeal. It was sent back to the trial court because some of the defendants had 'not answered'. Whereupon the representatives of the original Choppin who had first died and the heirs of one of his representatives were duly cited, and a judgment by default entered. It was then that certain Choppin heirs came into court and by appropriate pleading announced that they renounced the succession of their mother. The Supreme Court held that this judicial renunciation was sufficient. But all of this was in a suit for a partition. There was a contested suit, and the pleading was filed after a 'litis contestatio' had been reached. That is not the situation in the instant case. Here, when Mary V. Sanders made the announcement, there was no contested suit; and her announcement was made merely as an incident to her application for the opening of the succession. No action was ever taken on her application. Her pleading was almost immediately abandoned. Certainly, the same effect should not be given to her pleading as was given in the Choppin case. The facts in the Choppin case justified taking the case out of Article 1017 and 2415, or enlarging on those articles, but, surely, not the facts in the instant case.

"In the other case, too, Carter v. Fowler, supra, while the facts are not clearly set out on the point, the court deduces that the pleading had been acted upon. In that case, the widow, who had been constituted universal legatee and appointed executrix of the estate by the will of her husband, asked the confirmation of her appointment and also asked to be confirmed as natural tutrix of her minor children. In her petition, she declared that she renounced in

favor of her children all claim to her husband's estate as legatee under his will. Apparently her application had been, or was being, acted upon, when one of her creditors sought to execute against the property left by her husband on a judgment which had been obtained against her personally. In that case the Supreme Court gave effect to the judicial renunciation. But, to repeat, in the instant case, no action was ever taken on the pleading of Mary V. Sanders, and the court does not believe that her petition in the abandoned probate proceeding should be given the effect of a legal renunciation, so as to deprive her of her property.

"While the pleadings filed in the instant case allege on one side and admit on the other that the property in controversy is worth more than $2,000, on the trial there was evidence of value adduced; and that evidence fixes the value of the forty acres at $15 per acre, or $600 for the tract. And since the court has decided to allow the intervenor only an undivided one-half interest in the property, it seems proper to pass upon her claim for the widow's homestead. Accordingly, the court holds that if ever Mary V. Sanders had a right to claim the widow's homestead, in competition with Mary Lucas, she lost the claim when she remarried. After the death of Needham E. Jackson she married twice. To hold that she is entitled to claim the widow's homestead against the succession of Needham E. Jackson would be to say that she is also entitled to claim the same right against the succession of Flander Hudson, her subsequent husband. And this would give her homestead claims against the successions of three husbands at one and the same time, for she is now the widow of Vest Dunn, her third husband. The very wording of the homestead law is against such a proposition. The concluding language of Civil Code, Article 3252, with regard to the widow's homestead, is as follows:

" 'The surviving widow shall have and enjoy the usufruct of the amount so received from her deceased husband's succession *during her widowhood,* which amount shall afterwards vest in and belong to the children or other descendants of the deceased husband.' " (Italics by the court)

The reasons for judgment are then followed by the decree and judgment of the court.

As is readily noted the disposition of some of the most vital issues in the case depends upon two important questions of fact, namely, the legitimacy of the plaintiff resulting from a valid marriage between his father Needham Jackson and Mary Lucas, and, granting the validity of such marriage, the good faith of the intervenor, Mary Sanders, when she married Needham Jackson who already was married to Mary Lucas. Another important issue which is involved in a factual situation is that of the good faith of R. A. Gordon and the administratrix of his succession in their dealings regarding the land in dispute, in order to determine the plea of ten years' prescription. On these issues of fact, the findings of the trial judge are questioned by all parties, but clearly they seem to be supported by the testimony as pointed out by him and certain it is that no manifest error has been shown. The testimony of Mary Sanders on which he practically decided the issue of prescription against the defendant, is bitterly assailed by counsel for the administratrix of the Succession of R. A. Gordon but in the light of those facts and circumstances and also the documentary evidence referred to by the district judge, all of which tend to corroborate her in a great measure, we are of the opinion that her testimony was correctly appraised and given proper weight by him.

In this court counsel for defendant has filed a plea of thirty years' prescription but we find that the same is not supported by the record as presented to us. The only evidence of possession would arise from the payment of taxes, and whilst payment of taxes may indicate an intention to preserve the possession which has already commenced and which is necessary for the prescription of thirty years, it is not of itself evidence of corporeal possession. Civ.Code Article 3501; Searles v. Costillo, 12 La.Ann. 203; Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574. Further, we might mention that by the contention now made by counsel himself, the plea has been weakened. Under counsel's present theory, the tract of land in dispute is not contiguous to the other property formerly belonging to Gilbert Sanders and which the estate of Gordon acquired from the Sanders heirs. If that is so then the possession of the Gordon estate of the larger tract could not extend to the other tract and it would therefore

 

be found to be without possession of this latter tract as required in order to support the plea.

But counsel now contends further that this tract which is disconnected from the 120 acre tract bought by the estate of Gordon is the land which plaintiff and intervenor have in mind and that they are mistaken in their rights and are claiming the wrong tract of land. Counsel seems to have discovered the mistake which he now seeks to demonstrate, only after the case was on appeal to this court. In effect, counsel is asking this court to consider testimony which is not part of the record which of course the Appellate Court can not do, even for the purpose of remanding the case, unless a proper showing is made.

As already stated we are of the opinion that the trial judge has, in his written reasons for judgment, correctly analyzed the testimony as found in the record and has also properly disposed of all the legal points involved in the case. To the extent in which they have been quoted herein we adopt them as part of the opinion of this court and accordingly the judgment as rendered by him is affirmed.