TATE, Judge.
This is a petitory action instituted by the heirs of Bienvenue Arbour and Celestine Martinex Arbour, appellants herein, against Jesse L. Webb, appellee, seeking to have plaintiffs recognized as co-owners in indi-visión and as such, placing them in possession of a certain 3.72-acre tract situated in Section 17," T 9 S, R 11 E, to which entire section plaintiffs hold record title.
The possessor of said 3.72-acre tract, Jesse L. Webb, in answer to the suit also called in warranty the Succession of Mrs. Mathil-da Wilbert Blanchard, widow of Elphage P. Blanchard, his immediate predecessor in title, and A. Wilbert’s Sons Lumber & Shingle Company, from whom the Succession of Blanchard derived title. The defendant possessor and his warrantors separately filed pleas of prescription of ten years’ good faith possession under a deed translative of title, LSA-Civil Code Articles 3478, 3479 et seq., which were sustained by the District Court.
The undisputed facts show that the late Elphage P. Blanchard first occupied the property in dispute in 1938, when he secured oral permission from the president of the Wilbert Lumber Company to build a camp thereupon. He purchased the property by warranty deed dated May 18, 1943, and duly recorded May 29, 1943. Appellants’ petitory action was filed May 27, 1953, *46 or thus more than ten years after the date of the sale of the property, but less than ten years after said sale was recorded.
The only legal question posed by this appeal is whether the ten years’ acquisitive prescription by possession in good faith under.deed translative of title commences when the deed is actually executed, or on the other hand (as contended by plaintiffs-appellants) only when the deed is recorded.
Plaintiffs-appellants rely on LSA-Civil Code Article 2264, which provides: “No notarial act concerning immovable property shall have any effect against third persons” until properly recorded, and Article 2266, which provides:
“All sales, contracts and judgments affecting immovable property, which , shall not be so recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of the recording. * * * ”
The question has been decided adversely to plaintiffs’' forceful arguments. Pleas of ten years’ acquisitive prescription based upon possession in good ■ faith under deed' translative of title were upheld although the deeds were unrecorded, in Everett v. Clayton, 211 La. 211, 29 So.2d 769 and Cherami v. Cantrelle, 174 La. 995, 142 So. 150, 151, our Supreme Court in these cases specifically rejecting contentions similar to those advanced by plaintiffs herein.[1]
The basis for the 'acquiring of ownership by prescription is possession, not title, Articles 3458, 3473, LSA-Civil Code; and this possession, not the deed of title, is what gives notice to the record owner of the adverse claim. The Cherami case concisely summarizes the law as follows, 142 So. at page 154:
“ ‘To serve as a basis for prescription, the title need not be recorded. Registry is required only for transferring the property, and in the law of prescription the title does not operate to transfer the property, but merely to establish the good faith of the possessor and fix the limits of the possession.’ Bernstine v. Leeper et al., 118 La. 1098, 43 So. 889, 890.”
Counsel for plaintiffs cite to us certain passing dicta in Jackson v. Gordon, La.App. 1 Cir., 186 So. 399, 403; and also the case of Ellington v. Ellis & Dorsett, 2 La.App. 715, which latter may be distinguishable on the facts, but which in any case is not persuasive in view of the controlling Supreme Court cases above cited. Counsel attempts to distinguish the latter cases by arguing that they involved decision of pleas of 30 years’ prescription by possession in bad faith without any title at all, rather than the present pleaded ten years’ prescription under Arieles 3478, 3479; which may be a valid distinction as to the Bernstine case, but is incorrect as to the other cases, which specifically concerned the good faith possession plea.
Plaintiffs further contend that Blanchard knew his camp was built on plaintiffs’ property and that therefore his possession was not in-good faith.
Without detailed discussion of the evidence, we shall simply say that the District Court’s determination that Blanchard purchased the property, believing it to be that of the Wilbert Lumber Company, is supported by the preponderance of the evidence. , For at least several years prior to *47 Blanchard’s initial lease of the property from Wilbert, a Wilbert tenant house had been situated on the tract and a wire -fence had separated the tract from the remainder of plaintiffs’ land. Blanchard had a survey made of said property prior to his sale, which survey incorrectly showed the tract to be entirely located in Section 18 owned by Wilbert’s, rather than partly in Section 17 owned by plaintiffs. His camp had been built upon the tract and he had occupied same by oral lease from Wilbert for about five years before he purchased it, all without interruption or protest by plaintiffs, although his camp construction and use and occupancy were well known in the community and admittedly by those of plaintiffs themselves testifying.
We think as did the District Court that much of the testimony offered by plaintiffs simply shows that Blanchard first attempted unsuccessfully to obtain a camp-site, from plaintiffs in the neighborhood of the presently-concerned tract that he actually purchased from the Wilbert Lumber Company.
For the above and foregoing reasons,.the judgment of the District Court is affirmed.
Affirmed.

. Likewise Hubnall v. Watt & DeSaulles, 11 La.Ann. 57, and Bracy v. Buck, 11 La.Ann. 100, upheld prescriptive titles to slaves by good faith possession under deeds translative of title, against the specific contention that because these deeds were unrecorded they could not form the basis of such "good faith acquisitive prescription under the 1825 Codal Articles which were the equivalent of Article 3478 et seq., Civil Code of 1870. (Slaves were a species of immovable property, Article 401; Civil Code of 1825, see e. g., Spencer v. Amis, 12 La.Ann. 127.)