LOLLEY, J,
liThis appeal arises from the First Judicial District Court for the Parish of Caddo, State of Louisiana, where the trial court ruled on cross motions for summary judgment. It granted the motion of the defendant, William K. Dupree, and denied the motion of Robert Lucien Sr,, who now appeals. For the following reasons, we affirm the trial court’s judgment.
FACTS
Robert Lucien Sr. and William- K. Du-pree formed Audubon Meadow Partnership (“the Partnership”) in 1984.. A partnership agreement was registered with the Louisiana Secretary of State and the Cad-do Parish Clerk of Court, and it granted Dupree the authority to act as managing partner, “to deal with- the property of the Partnership.” Lucien and Dupree at all times were the only members of this partnership. Currently, both partners are still listed as representatives of the Partnership in the Louisiana Business Filings with the Secretary of State.
The purpose of the Partnership was to invest in and develop property in Caddo Parish into a subdivision.- On August 30, 1984, the Partnership obtained a loan from Commercial National Bank (“CNB”). Both Lucien and Dupree signed separate continuing guaranty agreements on behalf of the Partnership. In June 1986,- the .Partnership borrowed $713,140.00 from CNB in order to purchase the property. Thereafter the property was subdivided into 67 lots in preparation of the subdivision plans, which never came to fruition. Timely satisfaction of the note, due on December 18, 1986, did not occur, and 'CNB sought a judgment against the Partnership for 12the amount owed.[1] In 1990, Dupree, personally filed for Chapter 7 Bankruptcy, which was granted by the United States Bankruptcy Court for the Western District of Louisiana, Shreveport. Dupree claims his need to file for bankruptcy stemmed from the CNB suit.
After the purchase of the property in 1984, the Partnership did not pay the property taxes on the lots, and as a result, the lots were sold at tax sales. In 2010, when Dupree executed a quitclaim deed, supposedly in' his capacity as managing partner of the Partnership, in favor of Sapphire Land Company, LLC (“Sapphire”), the lots had been sold by tax sale and the time period for redemption had passed. Before signing the quitclaim deed, Dupree informed Sapphire that he did not think the Partnership owned any interest in the 67 lots. The quitclaim deed was filed in Caddo Parish. Dupree received $1,000.00 from Sapphire for the execution of the quitclaim deed, supposedly on behalf of the Partnership.
In 2012, Lucien retained counsel and filed a petition naming Dupree and Sapphire as defendants. Lucien alleged that Dupree “sold more than 67 lots for a mere $1000.00 ... the value of the property is greatly out of proportion with the price, and this sale is merely, a donation in dis *109 guise.” Lucien alleged the Partnership had terminated, but also alleged that Du-pree had violated the partnership agreement when he signed the quitclaim deed Iswith Sapphire. Dupree , answered with a reconventional demand claiming that Lucien was liable to him for breaches of fiduciary duty and a failure to distribute the Partnership’s assets after termination. Sapphire’s answer denied any knowledge of Dupree’s bankruptcy' or termination of the Partnership and stated no document was ever filed to notice innocent third parties of those facts. Sapphire also pled the exceptions of no right of action and prescription. A hearing on the exceptions was scheduled for January 14, 2018, but was continued.' In July 2013, all parties filed a joint motion to dismiss Sapphire. Lucien. amended his petition to include allegations that Dupree had no right to keep “100% interest of .the proceeds to himself,” 'resulting in unlawful conversion. Eventually, Lucien and Dupree filed motions for summary judgment, and a hearing on those motions was held.
At the hearing, and after reviewing the evidence, the trial court noted that Lucien could not articulate what he hoped to achieve by bringing this lawsuit, and fur-' ther, could not prove he had any ownership interest in the lots or suffered any damages. The trial court granted Du-pree’s motion and dismissed Lucien’s claims, and this appeal by Lucien, pro se, ensued. '
DISCUSSION
A motion for summary judgment is á procedural device used when there Is no genuine issue of material fact for all or part of the relief sought by a litigant. Samaha v. Rau, 2007-1726 (La.02/26/08), 977 So.2d 880. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if |4any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter, of law. La. C.C.P. art. 966(B). The mover need not negate every essential element of the opponent’s claim, action or defense; he need only point out the absence of factual support for one or more essential elements. La. C.C.P. art. 966(C)(1).' If the opponent then fails to produce sufficient support to establish that he "will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P, art. 966 C(2); Babin v. Winn-Dixie La., 2000-0078 (La.06/30/00), 764 So.2d 37; Capital One, NA v. Walters, 47,167 (La.App.2d Cir.06/20/12), 94 So.3d 972. An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B); Samaha v. Rau, supra; Brooks v. Transamerica Financial Advisors, 45,833 (La.App.2d Cir.02/02/11), 57 So.3d 1153.
Appellate review of summary judgment is de novo,- using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Sensebe v. Canal Indem. Co., 2010-0703 (La.01/28/11), 58 So.3d-441.
In this appeal, Lucien alleges the trial court erred in not granting summary judgment in his favor. He claims the Partnership no longer exists and was Converted to a sole proprietorship as a matter of law upon the entry of Dupree’s bankruptcy. He also claims the quitclaim deed between the Partnership and Sapphire is null and void based on Dupree’s lack of ^authority to act on behalf of the Partnership. After reviewing the record, it appears that Lucien believes Dupree sold the 67 lots pur *110 chased by the Partnership in the 1980s, but this is not the case.

Termination of the Partnership

As to Lucien’s assertion that the Partnership no longer exists, we agree. The Partnership was clearly terminated at the time of Dupree’s bankruptcy.' Louisiana C.C. art. 2826 states:
Unless continued as provided by law, a partnership is terminated by: the unanimous consent of its partners; a judgment of termination; the granting of an order for relief to the partnership under Chapter 7 of the Bankruptcy Code; the reduction of its membership to one person; the expiration of its term; or the attainment of, or the impossibility of attainment of the object of the partnership.
A partnership also terminates in accordance with provisions of the contract of partnership!;.] (Emphasis added).
Article IX of the partnership agreement between Lucien and Dupree stated:
A. The Partnership shall be terminated under the circumstances hereinafter set forth:
1. Upon the unanimous consent of all of the partners;
2. Upon the reduction of its membership to one person; and
3. Upon the death, insanity, involuntary bankruptcy or insolvency of any partner, or upon his filing a voluntary bankruptcy petition or his making a general assignment for the benefit of his creditors. (Emphasis added).
The partnership agreement is clear that the voluntary filing of bankruptcy terminates a party’s status as a partner; there-1 fore, Dupree ceased to be a partner once he filed for bankruptcy. Thus, once Du-pree ceased to be a partner, the membership in the Partnership was reduced to one and the ^Partnership was terminated under La. C.C, art. 2826 and the partnership agreement.
Lucien further argues that be was allowed to carry on the Partnership as a sole proprietorship pursuant to La. C.C. art. 2828, which, in pertinent part, states:
If a partnership terminates because its .membership is reduced to one person, that person is not bound to liquidate the partnership and may continue the business as a sole proprietor. If the person elects to continue the business, his former .partners are entitled to amounts equal to the value of their shares as of time , the partnership terminated, and they have the right to demand security for the payment of partnership debts.
This argument has absolutely no bearing on the issue here. True, Lucien may have continued to conduct business as a sole proprietor. However, since the Partnership terminated when Dupree filed for bankruptcy, his authority to act on behalf of the Partnership is not an issue because the Partnership not-longer existed. Consequently, Lucien did not suffer any .actual damages as a result of the execution of the quitclaim deed by Dupree. .
If the Partnership had any ownership interest in the property at the time of termination, that interest would have transferred to the former partners individually in ■ accordance with the law and the partnership agreement. La. C.C. 2823. However, Lucien failed to produce any evidence to establish that he would be able to satisfy his evidentiary burden at trial concerning- his ownership interest, if any, in the lots. It appears that Lucien’s goal in launching this litigation was to secure a judgment stating. the ’ quitclaim was null and void; however there is no merit to this position, 17as Lucien’s individual ownership interests were unaffected by this transac *111 tion; thus no genuine issue of material fact exists.

The Quitclaim' Deed

In 2010, Dupree executed what purports to be a quitclaim deed in favor of Sapphire. Quitclaim is a term of art with a defined legal meaning. La. C.C. art. 2502. In La. C.C. art. 2502 Revision Comment (c), the legislature explains:
At common law, the distinguishing factor of a quitclaim deed is that it is an instrument that purports to convey nothing more than the interest or estate of the grantor, if any he has, at the time of the conveyance, rather than the property itself. Conveyance by quitclaim does not include any implication that the vendor has good title to the property, or even that he has'any title at all. Thus, the purchaser by quitclaim deed is put on immediate notice that he is not acquiring land but merely the interest of his vendor in the land. (Emphasis added).
The Louisiana Supreme Court has held that the title to real property may be effectually transferred by quitclaim, but a quitclaim deed conveys only such title or interest- that the grantor had at the time it is given and excludes any implication that he has any title or interest. Franklin v. Camterra Resources Partners, Inc., 48,021 (La.App.2d Cir.05/22/13), 123 So.3d 184, 187-88.
As a practical matter, a quitclaim deed is often used to convey known and unknown interest in property. If one is not sure about a person’s interest in property, a quitclaim deed may be executed for a nominal amount to clear any defects in the claim of title. A document, such as the quitclaim executed by Dupree in favor of Sapphire, is executed to put to rest whether the seller had an interest in the property at the time of execution. The payment of $1000.00 received by Dupree from Sapphire is indeed a nominal |ssum. It is clear from these circumstances that the quitclaim deed at issue here was not an actual sale of the 67 lots or a donation'in disguise, as alleged by Lucien.
The evidence in this record, without a doubt, proves that at the time the quitclaim deed was executed the Partnership was no longer in existence; therefore, Du-pree could not transfer the' interest of a partnership that did not exist. The only property rights possibly transferred to Sapphire by this quitclaim deed was any ownership interest Dupree, individually, may have had in the lots' at the time of execution.

Proper Notice of Tax Sales

Lucien also argues that he did not receive proper notice regarding the tax sales of the 67 lots. The owner who has failed to pay taxes must be' given notice that the tax sale will take place. La. Const. Art. VII,'§ 25(A). If Lucien did not have proper notice of the tax sale, there is nothing that can be done within this suit. The Partnership and Lucien failed to pay the taxes on the lots for over 25 years. This resulted in the'properties being sold to third party purchasers at a tax sale.
Among the evidence presented at the hearing was the affidavit of Kelly Barnett, a title abstractor, who examined the, Caddo Parish tax assessment parcel detail notes and conveyance records spanning from 1985 to 2014. Her results proved that .all the lots, except Lot 44, were sold at tax sale for failure to pay the taxes, and that all the tax sales occurred before 2010. Lot 44, a small parcel of land at the front of the would-be subdivision, had been classified as a common area belonging to the IsAudubon Meadow’ Homes Association. The .lots were not redeemed during the three-year redemption period; therefore, *112 that possibility is now .-unavailable.[2] Lucien’s argument regarding notice of the tax sales is inappropriate here, because the proper parties were not named as defendants to this suit. See Smitko v. Gulf South Shrimp, Inc., 2011-2566 (La.07/02/12), 94 So.3d 750.

Dupree’s Request for Sanctions

Dupree claims Lucien’s appeal is frivolous because it does not raise any serious legal issues. He urges sanctions pursuant to La. C.C.P. art. 2164, which states:
The appellate, court shall render any judgment which is just, legal, and proper upon the record on appeal. . The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in, its judgment may be considered equitable.
Sanctions imposed upon a pro se litigant are appropriate when such action has been justified by the facts presented. Wisner v. PDQ Constr. Co., 43,543 (La.App.2d Cir.09/17/08), 996 So.2d 442, 444, writ not cons., 2010-2553 (La.01/14/11), 52 So.3d 890. Here, Lücien is a pro se litigant. On this record, we cannot find that Lucien’s actions justify the imposition of sanctions. While'we agree that Lucien’s claims have no real basis in law, we decline to penalize him for trying to right a perceived wrong by his former business partner.
ImAfter a review of this record in its entirety, it is clear there is no genuine issue of material fact, and dismissal of Lucien’s motion for summary judgment was proper. The undisputed facts of this case indicate that the Partnership no longer exists and Dupree did not have authority to act on behalf of a partnership that did not exist. Summary judgment is designed to provide a just, speedy, and inexpensive remedy where no material issues exist. During the hearing, the trial court noted the expense of trial and the lack of genuine issues in this matter. Here, Lu-den was unable to set forth any specific facts showing any genuine issue for trial. The trial court properly granted summary judgment in favor of Dupree.
CONCLUSION
Considering the foregoing reasons, the judgment of the trial court granting the motion for summary judgment by William K. Dupree and dismissing the claims of Robert Lucien, Sr. is affirmed. Costs of this appeal are assessed to Robert Lucien, Sr.
AFFIRMED.

. CNB sued the Partnership and the guarantors, Lucien and Dupree, seeking judgment for the amount owed as well as recognition of its mortgage. Lucien responded, individually, with a reconventional demand alleging that he was supplied false information by CNB, amounting to negligent misrepresentation, that CNB had not acted in good faith, and that CNB owed him a duty to investigate the feasibility of his proposed land project, but failed to- do. Concisely,- Lucien claimed that because of CNB’s alleged negligence the letter of credit lapsed and CNB could not recover from him. The trial court dismissed Lucien’s reconventional demand for failure to state a cause of action. Lucien’s appeal was unsuccessful. Commercial National Bank in Shreveport v. Audubon Meadow Partnership, 566 So.2d 1136, 1140 (La.App. 2d Cir.1990).

. Regarding the redemption of property sold at tax sale, the Louisiana Constitution of 1974 provides, "[t]he property sold shall be redeemable for three years after the date of . recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.” La. Const. Art. VII, § 25(B)(1).