| | | |
|---|---|---|
| **TERENCE COOPER &** | * | **NO. 2022-CA-0196** |
| **VANESSA COOPER** | | |
| | * | |
| **VERSUS** | | **COURT OF APPEAL** |
| | * | |
| **SIDNEY BRISCO, III AND** | | **FOURTH CIRCUIT** |
| **ENGLISH TURN PROPERTY** | * | |
| **OWNERS ASSOCIATION, INC.** | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-09870, DIVISION "B-5"
Honorable Rachael Johnson,
**\* \* \* \* \* \***
**Judge Paula A. Brown**
**\* \* \* \* \* \***

(Court composed of Judge Roland L. Belsome, Judge Daniel L. Dysart, Judge Paula A. Brown)

Ryan Michael Scafidel
SCAFIDEL LAW FIRM, L.L.C.
4130 Canal Street
New Orleans, LA 70119

Kyle Salvador Sclafani
THE LAW OFFICE OF KYLE S. SCLAFANI
4130 Canal Street, Suite A
New Orleans, LA 70119

      COUNSEL FOR PLAINTIFF/APPELLEE

Jacob Kansas
LAW OFFICE OF JACOB KANSAS
1801 Carol Sue Avenue
Gretna, LA 70056

      COUNSEL FOR DEFENDANT/APPELLANT

               **AFFIRMED**
               **OCTOBER 18, 2022**

PAB
RLB
DLD

This is a civil action. Appellant, English Turn Property Owners Association, Inc. ("ETPOA"), appeals the January 26, 2022 judgment of the district court, which granted the motion for partial summary judgment to quiet title in a 99% interest of immovable property in favor of Appellees, Terence Cooper & Vanessa Cooper ("the Coopers"). Based upon our *de novo* review, we affirm the judgment of the district court.

## FACTS AND PROCEDURAL HISTORY

On August 23, 2006, Sidney Brisco, III ("Mr. Brisco") acquired certain immovable property located in Orleans Parish, bearing the municipal address of 19 Forest Oaks Drive, New Orleans, LA 70131 (the "Property"), by virtue of a Credit Sale, recorded as CN 329482 on September 7, 2006 in the Orleans Parish Land Records Division in the amount of $85,799.00. The Property was (and still is) a vacant lot. Mr. Brisco failed to pay the City of New Orleans *ad valorem* taxes on the Property, and it was subsequently sold to the Coopers via tax sale as evidenced by the tax sale certificate[1] dated January 29, 2010, recorded in the Orleans Parish Land Records Division at CIN 450704 on February 11, 2010.

---

[1] The document issued to the Coopers to evidence the tax sale is entitled "Tax Sale Deed;" however, as provided under La. R.S. 47:2122 "'[t]ax sale certificate' means the written notice evidencing a tax sale to be filed in accordance with R.S. 47:2155 and 2196." La R.S. 47:2155

1

The Coopers filed a petition to quiet title of their interest in the Property (the "Petition") on November 19, 2020. The Coopers were unable to locate Mr. Brisco and a curator was appointed to represent him on November 20, 2020. The Coopers eventually located Mr. Brisco, and on December 31, 2020, he executed a quitclaim deed (the "Quitclaim") in the Coopers favor. The Quitclaim was later recorded on January 6, 2021, at Instrument No. 2021-0884, CIN 686019 in the Orleans Parish Land Records Division. On December 11, 2020, The ETPOA filed an answer including affirmative defenses and a reconventional demand, in which it asserted that the Property was subject to the ETPOA's *Declaration of Covenants, Conditions, and Restrictions, Articles of Incorporation of English Turn Property Owners Association Inc., and By-Laws of English Turn Property Owners Association* (the "DCCR"). The ETPOA posited that the Coopers were liable *in solido* with Mr. Brisco for all of the unpaid assessments, grass cuttings, penalties, court costs and attorney's fees associated with various liens and judgments against the Property. ETPOA alleged in its reconventional demand that the Coopers should be recognized as owners of the Property dating back to December 2, 2009.[2]

The Coopers filed an answer to reconventional demand on May 10, 2021, in which they denied that they were owners of the Property and that they were liable

---

and 2196 both include a clarifying provision that explains "[t]he tax sale certificate contemplated by this Section is a tax deed for purposes of Louisiana Constitution Article VII, Section 25." Therefore, in keeping with the new statutory scheme laid out in Revised Statutes Title 47, subtitle 3, chapter 5, we will refer to the document as a tax sale certificate throughout this opinion.

[2] Specifically, ETPOA alleged that the Coopers and Mr. Brisco, as co-owners of the Property, are "jointly, severally, individually, and in solido [liable for] the full sum of $35,823.50, as assessments accruing through July 1, 2020, grass cutting charges accruing through of December 31, 2019, plus late charges of ten (10%) percent of the assessments from January 1, 2010, to April 30, 2019, and late charges of $100.00 commencing with the July 1, 2019, assessment, plus twelve (12%) percent per annum interest, the maximum allowed from under Louisiana law, from date due until paid, plus attorney's fees and costs of these proceedings."

for the past due assessments. ETPOA then filed a supplemental and amended answer with affirmative defenses and reconventional demand on July 2, 2021, in which it alleged the Coopers were owners of the Property because in the Petition the Coopers referred to themselves as owners of the Property. ETPOA further alleged that the Quitclaim transferred a 100% interest in the Property to the Coopers at the time of its execution.[3]

On July 21, 2021 the Coopers filed a motion for partial summary judgment seeking to quiet title in their 99% interest and be declared owner of immovable property. EPTOA filed an opposition to the Coopers' motion for summary judgment on October 29, 2021. In its opposition, EPTOA contended that the Coopers, "having 100% uncontested ownership of the Property, have no need nor any right to proceed" with the Petition. Alternatively, EPTOA argued that when the Coopers acquired the Property through a tax sale certificate, they acquired it subject to the assessments provided for in the DCCR and in accordance with the Louisiana Homeowners' Association Act's provisions concerning building restrictions.

This matter came for hearing on November 9, 2021. Following, the district court determined there were no genuine issues of material fact, and on December 1, 2021, the district court issued a written judgment in favor of the Coopers, quieting title to their interest in the Property and cancelling all liens and judgments against the Property.[4] This timely appeal followed.

---

[3] EPTOA contended that the rights obtained by the Coopers in the Quitclaim rendered the judgment from the district court moot, because it would not have any practical effect or grant the Coopers anything more than they already had – 100% ownership in the Property.

[4] Specifically, the trial court ordered the Recorder of Mortgages for Orleans Parish to cancel and erase the following:
2008-61605, MN 956850, MB 4175/149-Lien

**STANDARD OF REVIEW**

This Court reviews the granting of "[a] summary judgment on appeal *de novo*, using the same criteria that govern the [district] court's determination of whether summary judgment is appropriate." *Planchard v. New Hotel Monteleone, LLC*, 21-00347, pp. 2-3 (La. 12/10/21), 332 So.3d 623, 625 (citing *Guidry v. Brookshire Grocery Co.*, 19-1999 (La. 2/26/20), 289 So.3d 1026, 1027; *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So.3d 1034, 1038; *Wright v. Louisiana Power & Light*, 06-1181 (La. 3/9/07), 951 So.2d 1058, 1070). Generally, on a motion for summary judgment, the burden of proof remains with the mover. But, if the moving party will not bear the burden of proof on the issue at trial and identifies an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the non-moving party must produce factual support sufficient to counter that assertion and establish that he will be able to satisfy his evidentiary burden of proof at trial. La. C.C.P. art. 966(D)(1). "However, if the opponent of the motion cannot do so, there is no genuine issue of material fact and summary judgment will be granted." *Ely Edwards Enterprises, Inc. v. Pontchartrain Park CDC Real Estate Holdings, LLC*, 21-0623 pp. 5-6 (La. App. 4 Cir. 4/13/22), 338 So.3d 50, 53.

As noted by this Court in *Heirs of John Beckwith LLC v. Sims*, 20-0476, p. 16 (La. App. 4 Cir. 3/20/21) 315 So.3d 306, 320, "[t]he summary judgment

---

2009-16138, MN 970318, MB 4196/394 - Lien
2009-24930, MN 977231, MB 4206/304 - Lis Pendens
2012-36481, MN 1102368, MB 4379/24 - Lien
2012-417^7, MN 1106604, MB 4384/1344 - Lis Pendens
2014-17461, MN J157905 - Lien
2020-46802, MN 1347058 - Lis Pendens
2020-46566, MN 1346950 - Affidavit for Privilege
2021-02422, MN 1349759 - Judgment on Revival
MN 1111434, MN 4389/501 - Judgment

procedure can be an appropriate manner by which disputes in property ownership are resolved." (citing *Stow-Serge v. Side by Side Redevelopment, Inc.*, 20-0015, p. 1 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, 74, *writ denied*, 20-00870 (La. 10/14/20), 302 So.3d 1120; *Hooper v. Hero Lands Co.*, 15-0929 (La. App. 4 Cir. 3/30/16), 216 So.3d 965; *Plaquemines Par. Gov't v. Schenck*, 15-0127, pp. 3-4 (La. App. 4 Cir. 12/9/15), 182 So.3d 1122, 1124; *Chauvin v. Shell Oil Co.*, 16-609 (La. App. 5 Cir. 10/25/17), 231 So.3d 903, 905, *writ denied*, 17-1985 (La. 1/29/18), 233 So.3d 607 *Blaise v. Smith*, 01-1512 (La. App. 3 Cir. 3/6/02), 809 So.2d 1253, 1254.) With these precepts in mind, we turn to our *de novo* review.

**DISCUSSION**

ETPOA argues that the district court erred in granting the motion for partial summary judgment in favor of the Coopers. Specifically, ETPOA contends that (1) the Coopers accrued ownership in the Property by virtue of the tax sale such that they were immediately subject to the DCCR; (2) the DCCR is a building restriction within the meaning of La. 9:1141.4; and (3) the Quitclaim conveyed a 100% ownership interest to the Coopers at the time of its execution, thereby removing it from the tax sale processes as outlined in Louisiana Constitution Article VII § 25 and La. R.S. 47:2121 *et seq.* (the "Tax Sale Statutes").

*Tax Sales*

Article VII § 25 of the Louisiana Constitution establishes the basis upon which property holders who are in arrears for payment of *ad valorem* taxes may be divested of their ownership rights in immovable property.[5] On January 1, 2009,

---

[5] La. Const. Art. VII § 25 provides, in pertinent part:
> Section 25. (A) Tax Sales. There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are

5

the Louisiana legislature enacted Louisiana Revised Statutes Title 47, subtitle 3, chapter 5 and expressed its motivation in La. R.S. 47:2121(A).

> A. Purpose. The purpose of this Chapter is to amend and restate the law governing the payment and collection of property taxes, tax sales, and redemptions to:
>
> (1) Reorganize the prior law into a single comprehensive Chapter, using consistent terminology.
>
> (2) Encourage the payment and efficient collection of property taxes.
>
> (3) Satisfy the requirements of due process.
>
> (4) Provide a fair process and statutory price for the redemption of tax sale and adjudicated properties.

---

due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. The advertisement shall be published in the official journal of the parish or municipality, or, if there is no official journal, as provided by law for sheriffs' sales, in the manner provided for judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.

(B) Redemption. The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five percent penalty thereon, and interest at the rate of one percent per month until redemption.

(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.

(D) Quieting Tax Title. The manner of notice and form of proceeding to quiet tax titles shall be provided by law

6

(5) Encourage the return to commerce of tax sale and adjudicated properties, without unnecessary public expense, through clear procedures that allow interested persons to carry out the title search and notification procedures considered necessary under contemporary standards of due process to acquire merchantable title to those properties.

(6) Avoid the imposition on the public of extensive title search and notification expenses for properties that are redeemed or that fail to attract any party willing to bear the expenses of establishing merchantable title.

(7) Retain, to the extent not inconsistent with the preceding purposes, the traditional procedures governing tax sales, adjudications, and redemptions in this state.

Additionally, when the tax-delinquent property is offered for sale, the tax collector is directed to "sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs." *See* La. Const. Art. VII § 25(A) and La. R.S. 47:2153(B)(1)(a). It was through this process that the Coopers placed a bid for and obtained a 99% undivided interest in the Property, which is reflected in the tax sale certificate.

*Tax sale purchasers' obligation to comply with the DCCR*

The Property at the center of this dispute is located within English Turn Subdivision, an exclusive, gated community that lies on the Westbank of Orleans Parish. ETPOA argues that by virtue of its location within the subdivision, the Property and its owner are subject to the terms and conditions of the DCCR. The ETPOA cites that portion of the DCCR, namely Article IV Section 4.01, in which membership in the ETPOA is concomitant with ownership of any lot or dwelling located in English Turn.[6] Thus, it follows (and is undisputed by either party) that

---

[6] "Article IV MEMBERSHIP Section 4.01 Membership every Owner shall be deemed to have a membership in the Association. Membership shall be appurtenant and may not be separated from ownership of any Lot or Dwelling, and ownership of a Lot or Dwelling shall be the sole qualification for such membership."

when Mr. Brisco purchased the Property via credit sale from ETPOA, his ownership commenced subject to the DCCR. Consequently, under the terms of the DCCR Mr. Brisco became obligated to pay assessments to ETPOA for the common maintenance of the English Turn Subdivision. ETPOA contends that because of the tax sale and Quitclaim, the Coopers became 100% owners in the Property subject to the terms of the DCCR and are therefore obligated for the unpaid assessments. In support of its arguments, ETPOA cites to Article 9.02 of the DCCR entitled "Creation of Lien and Personal Obligation of Assessments" in which it states in pertinent part:

> Any such assessments . . . shall be an equitable charge and continuing lien upon the Lot or Dwelling, the Owner of which is responsible for payment. Each Owner shall be personally liable for assessments coming due while he is the Owner of a Lot or Dwelling, and his grantee shall take title to such Lot or Dwelling, subject to the equitable charge and continuing lien therefor. . . .

We find it significant that under Section 9.02 the DCCR explicitly styles the assessments as personal obligations belonging to the owner of a lot. We agree that they are. Under similar circumstances, the appellate court in *Southern Trace Property Owner's Association v. Williams*, 52,653, p. 11 (La. App. 2 Cir. 9/25/19), 280 So.3d 826, 833, determined that language included in the Southern Trace Declaration of Protective Covenants, Conditions, and Building Restrictions and Grants of Servitudes was sufficient to establish that, although the assessments are attached to the immovable property, the obligation to pay those assessments was an obligation belonging to the owner at the time those assessments were due. *See also Eastover Prop. Owner's Ass'n, Inc.*, 02-1502 p. 4 (La. App. 4th Cir. 05/21/03), 848 So.2d 710, 712 *writ denied*, 03-1604 (La. 11/21/03), 860 So. 2d 544 (where this Court reasoned, much like the case *sub judice*, that "the Eastover [Property

8

Owners' Association] act of restrictions clearly sets forth the nature of the assessments as being personal to the owners of the property.").

Thus, the issue before this Court is whether the Coopers, in their capacity as tax sale purchasers, are to be considered owners of the Property at the time of their purchase. We look to the Tax Sale Statutes for guidance. Specifically, La. R.S. 47:2121(C)(1) establishes that:

> A tax sale confers on the tax sale purchaser . . . only tax sale title. If the tax sale property is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interests, claims, or encumbrances held by all duly notified persons.

Once the redemptive period has passed and no action has been taken by the owner to redeem the property, La. R.S. 47:2266 provides the method by which a tax sale purchaser may quiet title.[7] Relying on the plain language of these statutes, we read them to mean that a tax sale purchaser does not accrue actual ownership rights in the property until all notice requirements[8] are met, the expiration of the redemptive period and then judgment is rendered in the purchaser's favor through an ordinary proceeding to quiet title. Further, this Court has consistently held that purchase of a tax sale certificate bestows upon the purchaser only "future rights of ownership after due notice to all 'tax sale parties' and the expiration of the redemptive period,

---

[7] La. R.S. 47:2266(A)(1) states, in pertinent part, that "[a]fter expiration of the redemptive period, an acquiring person may institute an ordinary proceeding against the tax sale parties whose interests the petitioner seeks to be terminated." Title for tax sale properties may also be acquired through a monition proceeding, La. R.S. 47:2271 *et seq.* or a suit to terminate the interest of the property owner. La. R.S. 47:2157; however, neither of these other methods are at issue here.

[8] *Lack of notice is not at issue in this appeal.
La. R.S. 47:2121(B) provides that "[n]o tax sale shall transfer or terminate the property interest of any person in tax sale property or adjudicated property until that person has been duly notified and both the redemptive period and any right held by that person to assert a payment or redemption nullity under R.S. 47:2286 have terminated."

9

as well as the filing of a suit to quiet title." *Stow-Serge v. Side By Side Redevelopment, Inc.*, 20-0015, p. 4, 302 So.3d 71, 76 (quoting *Central Properties v. Fairway Gardenhomes, LLC*, 2016-1855, 2016-1946, p. 12 (La. 6/27/17), 225 So.3d 441, 449); *See also Strategic Capital Holdings, LLC v. Bennett*, 21-0672, p.8 (La. App. 4 Cir. 7/29/22), ___ So.3d ____, ____ 2022 WL 3009752 at *4. It follows then, that the Coopers were not owners of the Property in any statutory or jurisprudential sense until the December 1, 2021 judgment served to quiet title.

Notwithstanding, ETPOA contends that the Coopers judicially confessed in the Petition to be the owners of the Property. Pursuant to La. C.C. Art. 1853 "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." In the Petition, the Coopers referred to themselves as the owners of the Property, which, undoubtedly, were errors in fact at the time of filing of the Petition. As we previously discussed, the tax sale certificate does not convey any ownership rights, merely tax sale title with the potential of future rights. In *Johnson v Sotomayor*, 21-0460, p. 6 (La. App. 4 Cir. 2/2/22), ___ So.3d ____, ____ 2022 WL 305318 at *3, a factually similar case to the case *sub judice,* this Court reasoned that "[t]he claim of ownership in Appellee's petition . . . is a term of art used in these petitions. The claim of ownership is a conclusion based upon certain milestones being met. Appellee's petition clearly states she is seeking full ownership and lays out the actions taken to acquire ownership. [Appellee's] petition is in line with similarly filed petitions." Here, at the time of filing the Petition, the Coopers had complied with almost all of the prerequisites arising under La. Const. art. VII § 25 and the Tax Sale Statutes (the curator was appointed

10

for Mr. Brisco the following day) and clearly demonstrated their intent to gain full ownership of their interest of the Property. Therefore, we find that the Coopers' Petition was simply styled in the way that similar petitions to quiet title are styled, particularly in light of the tax sale certificate attached to the petition, which unambiguously reflects that the Coopers had purchased only a 99% interest in the Property. Furthermore, it is clear from the record that the Coopers were not asserting or confessing claims of ownership based upon the Quitclaim, which was not executed until approximately six weeks after the filing of the Petition.

Moreover, this Court in *Wells Fargo Bank v. Washington*, 19-0392, pp. 6-7 (La. App. 4 Cir. 10/23/19), 282 So.3d 1176, 1180, reasoned that "[b]efore a judicial admission or confession is binding in a civil matter, a party must rely on said admission or confession to its detriment." (citing *Yount v. Lafayette Ins. Co.*, 08-0308, p. 18 (La. App. 4 Cir. 1/28/09), 4 So.3d 162, 173-174). "Also, a unilateral pleading or allegation in a petition is insufficient, absent a response to it, to constitute a binding judicial admission or confession as a matter of law." *Id.* at pp. 6, 282 So.3d 1176, 1180. Under the general theory of detrimental reliance, a party would need to show that there was "a change in position to one's detriment because of the reliance." *DLN Holdings, L.L.C. v. Guglielmo*, 21-0640, p. 18 (La. App. 4 Cir. 6/29/22), ___ So.3d ____, ____ 2022 WL 2339094 at *9. While ETPOA did take action in response to the Coopers' Petition by filing an Affidavit for Privilege on December 11, 2020, we do not find that this action had any material effect on ETPOA's position as a lienholder. This affidavit did nothing more than preserve ETPOA's privilege against the Property that was previously in place as a result of the multiple liens ETPOA filed against Mr. Brisco. As a result, we conclude that ETPOA's contention that the Coopers were owners of the

property and subject to the DCCR at any time prior to this judgment is without merit.[9]

*The Louisiana Homeowners Association Act*

The Louisiana Homeowners Association Act ("LHAA"), La. R.S. 9:1141.1, *et seq.*, was enacted in 1999, and applies to all residential planned communities. There is no dispute that English Turn Subdivision is one such community contemplated under the LHAA.[10]  La. R.S. 9:1141.3(A) provides, in pertinent part, that "this Part shall not be construed to affect the validity or superiority of any provision of a community document. Only to the extent the community documents are silent shall the provisions of this Part apply."  Further, La. R.S. 9:1141.8(A) mandates, in relevant part, that "[t]he community documents of residential planned communities shall have the force of law between the homeowners association and the individual lot owners and as between individual lot owners. . . ." Thus, the DCCR is controlling between ETPOA and the individual lot owners of English Turn Subdivision.

---

[9] La. R.S. 47:2121 was amended by Acts 2022  La. Sess. Law Serv. Act 404 (H.B. 1007) in which the legislature further clarified its intent by adding several provisions articulating and differentiating the rights of a tax sale purchaser and an owner.  One such addition dictates that "[t]ax sale title does not confer on the tax sale purchaser the right of possession of tax sale property that is occupied by the owner and does not confer on the tax sale purchaser the right to make improvements or charge rental or lease payments to the owner or occupants of the tax sale property." This dovetails nicely with the Civil Code understanding of ownership.  *See* La. C.C. Art. 477, which makes clear that "[o]wnership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law;" La. C.C. Art. 483, which sets forth that "[i]n the absence of rights of other persons, the owner of a thing acquires the ownership of its natural and civil fruits;" and La. C.C. Art. 551, which provides, in part, that "[c]ivil [f]ruits are revenues derived from a thing by operation of law . . . such as rentals."

[10] *See* La. R.S. 9:1141.2 (7) wherein it is explained that "'Residential planned community' or 'planned community' means a real estate development, used primarily for residential purposes, in which the owners of separately owned lots are mandatory members of an association by virtue of such ownership."

ETPOA asserts the DCCR "specifically include[s] the collection of past due debts or monies owed as a building restriction."  However, the record before us contains only seven selected pages from the DCCR, provided by the Coopers as Exhibit C to their memorandum in support of their motion for partial summary judgment and filed with the district court; none of these pages refer to "building restrictions" in connection with assessments. These selected pages show that in Article IX, the DCCR speaks to the issue of assessments on its own, while the portion we have of Article X, entitled "Architectural Standards and Use Restrictions," addresses what is more conventionally thought of as "building restrictions."[11]  Thus, we conclude that the DCCR is not silent as to the issue of assessments and building restrictions and, therefore, the LHAA is inapplicable to these issues as they pertain to ETPOA and the individual lot owners.  Having found that the Coopers were at no time owners of any interest in the Property prior to the December 21, 2021 judgment, we find this argument to be unpersuasive.

Alternatively, ETPOA relies on La. R.S. 9:1141.5(B) to assert that we should consider the LHAA definition of "building restrictions" to be controlling in this instance.   La. R.S. 9:1141.5 provides:

> 1141.5. Building restrictions; generally, affirmative duty, and common areas
>
> A.   Building restrictions affecting the building standards, specified uses, or improvements of association property may be established, amended, or terminated in accordance with the provisions of this Part.

---

[11] This article provides that "10.01 Purpose. In order to preserve the natural setting and beauty of the Development, to establish and preserve a harmonious and aesthetically pleasing design for the Development, and to protect and promote the value of the Property, the Lots, Dwellings, Village Home Areas, any and all improvements located therein or thereon shall be subject to the restrictions set forth in this Article X. Every grantee of any interest in the Property, by acceptance of a deed or other conveyance of such interest, agrees to be bound by the provisions of this Article X."

B.  Such building restrictions may include the imposition of an affirmative duty, including the affirmative duty to pay monthly or periodic dues or fees, or assessments for a particular expense or capital improvement, that are reasonable for the maintenance, improvement, or safety, or any combination thereof, of the planned community.

C.  Such building restrictions may also regulate the building standards, specified uses, and improvements of common areas of a homeowners association, including but not limited to the regulation of passage, ingress, and egress upon common areas, streets, and street rights-of-way.

ETPOA then asks that we apply the Part (B) definition of building restrictions as it relates to "the affirmative duty to pay monthly or periodic dues or fees, or assessments," to that portion of the Tax Sale Statutes found in La. R.S. 47:2121(C) which provides:

(3)  Notwithstanding any provision in this Chapter to the contrary, the following interests affecting immovable property shall not be terminated pursuant to this Chapter to the extent the interests remain effective against third parties and are filed with the appropriate recorder prior to the filing of the tax sale certificate:

* * *

(d)  Building restrictions.

However, we find that it is clear from our reading of La. R.S. 9:1141.6, that while the charge of the building restrictions go to the Property, the effect is personal to the owners.[12] Again, we note that having found that the Coopers were at no time owners of any interest in the Property prior to the December 21, 2021 judgment, La R.S. 9:1141.5 is equally inapplicable.  Furthermore, we find the inclusion of building restrictions within La. R.S. 47:2121(C)(3)(d) to be prospective in nature. To read otherwise would place this provision squarely in conflict with La. R.S. 47:2121(C)(1), which sets forth that "tax sale title transfers to its holder ownership

---

[12] *See* La. R.S. 9:1141.6 (C)(1) which dictates that "building restrictions become a charge on the property and affect all current owners and, once recorded in the public records, affect all subsequent owners."

14

of the tax sale property, free of the ownership and other interests, claims, or encumbrances held by all duly notified persons." This assignment of error is without merit.

*Quitclaim Deed*

ETPOA argues that the Quitclaim executed by Mr. Brisco in favor of the Coopers is defective because it failed to include a specific waiver of warranty. As a result, ETPOA contends that the Quitclaim bestowed full ownership rights on the Coopers at the time of its execution, prior to the action to quiet title, and effectively removed them from the rights afforded them under the Tax Sale Statutes, i.e., to obtain ownership in the Property free from any encumbrances. We disagree.

In *Lucien v. Dupree,* 50,347, p. 7 (La. App. 2 Cir. 1/13/16), 185 So.3d 107, 111, the appellate court set forth the operation of quitclaim deeds under Louisiana law (emphasis omitted):

> Quitclaim is a term of art with a defined legal meaning. La. C.C. art. 2502. In La. C.C. art. 2502 Revision Comment (c), the legislature explains:
>
>> At common law, the distinguishing factor of a quitclaim deed is that it is an instrument that purports to convey nothing more than the interest or estate of the grantor, if any he has, at the time of the conveyance, rather than the property itself. Conveyance by quitclaim does not include any implication that the vendor has good title to the property, or even that he has any title at all. Thus, the purchaser by quitclaim deed is put on immediate notice that he is not acquiring land but merely the interest of his vendor in the land.
>>
>> * * *
>
> As a practical matter, a quitclaim deed is often used to convey known and unknown interest in property. If one is not sure about a person's interest in property, a quitclaim deed may be executed for a nominal amount to clear any defects in the claim of title.

ETPOA, citing *Sabourin v Jilek*, asserts that by virtue of the defect, the Quitclaim actually operated as a general warranty deed. *Sabourin v Jilek*, 128

15

So.2d 698, 701 (4th Cir. 1961). We find ETPOA's reliance on *Sabourin* to be misplaced. In *Sabourin* this Court explained that "[t]he addition of the words 'without warranty' appearing in the last paragraph immediately following the words 'this deed of quit claim'. . . changes nothing and is merely a redundancy since under our law a quit claim is a transfer of the vendor's interest without warranty." *Id*. (citing *McLeroy v. Duckworth*, 13 La. Ann. 410.)[13]

In the case *sub judice*, the document in question is titled "Quitclaim Deed." Our view of the terms of the Quitclaim itself reveals that the parties' intent in executing this instrument was for the express purpose of "removing any cloud from the title to the herein described property." Included immediately before the signature page is the disclaimer: "THE UNDERSIGNED ACKNOWLEDGE THAT NO TITLE EXAM WAS REQUESTED AND NO TITLE EXAM WAS PERFORMED ON THE SUBJECT PROPERTY" which we find to be a clear expression that there is no warranty, in spite of the absence of that specific language. It is well settled that "[i]n the interpretation of deeds, the intentions of the parties must be gathered from an inspection of the instrument itself, [without the aid of extrinsic evidence], if their intentions can be thus ascertained." *Doyal v. Pickett*, 628 So.2d 184, 187 (La. App. 2d Cir. 1993)(emphasis omitted). The Louisiana Supreme Court articulated this concept by finding that "when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *Sims v. Mulhearn Funeral*

_____

[13] We would note that at the time the *Sabourin* Court rendered its decision in 1961, the common law quitclaim concept had made its way into Louisiana jurisprudence, but not Louisiana law. However, as discussed *supra*, the quitclaim idea has since been codified into the Civil Code under La. C.C. Art. 2502, which was enacted in 1993.

*Home, Inc.*, 07-0054, p. 10 (La. 5/22/07), 956 So.2d 583, 590. Consequently, we conclude that the Quitclaim at issue functioned as a traditional quitclaim deed and did nothing more than transfer any interest Mr. Brisco might have had in the Property – but not the Property itself – at the time of its execution. This assignment of error is unpersuasive.

Finally, we find that by purchasing the tax sale certificate, the Coopers accrued a set of rights that could not be extinguished except by redemption of the Property or an annulment of the tax sale.[14] Accordingly, we find there to be no conflict with the LHAA, where it is provided that "[t]his Part shall not impair any right that is guaranteed or protected by the constitution of this state or the United States, nor shall this Part be construed to affect any . . . right accrued." La. R.S. 9:1141.3(C). Furthermore, having completed all of the prerequisites outlined *supra*, the Coopers became entitled to a cause of action to quiet title in their interest in the Property. "Once a party's cause of action accrues, it becomes a vested property right that may not constitutionally be divested." *Cole v. Celotex Corp.,* 599 So.2d 1058, 1063 (La.1992).

## CONCLUSION

For the foregoing reasons and upon our *de novo* review, we find that there exist no genuine issues of material fact and Appellees, Terence Cooper & Vanessa Cooper, are entitled to summary judgment as a matter of law. Accordingly, the district court's judgment is affirmed.

**AFFIRMED**

---

[14] *See* La. R.S. 47:2122(22) wherein "'Tax sale title' means the set of rights acquired by a tax sale purchaser. . . ."